JOHN PATTERSON *vs.* JACOB C. WILSON.—*E. S. June,* 1834.

An action upon the case in the nature of waste, can, upon the principles of the common law, be only maintained in the county court of the county where the trespass was committed. It is a local and not a transitory action; but if the plaintiff alleges in his declaration that the defendant has removed out of the county where the property wasted may lie, and cannot be found in such county, then, under the act of 1785, ch. 87, sec. 4, the defendant may be sued in the court of any county where he or she may be found.

APPEAL from *Caroline* county court.

This was an action on the case in the nature of waste, instituted by the appellant against the appellee, a resident of *Caroline* county, on the 4th of March, 1829, to recover damages for injuries done to the appellant's inheritance, situate in *Dorchester* county, by the appellee, the tenant thereof.

The defendant demurred specially to the declaration, upon the ground that the action was *local,* and should have been brought in *Dorchester* county.

The plaintiff then joined in demurrer, and from the *pro forma* judgment against him, he appealed to this court.

The cause was argued before EARLE, ARCHER, and DORSEY, J's.

*Page,* for the appellant, cited the acts of 1714, *ch.* 4; 1728, *ch.* 24; 1796, *ch.* 43; 1785, *ch.* 87; 1801, *ch.* 74,

*sec.* 11. 1 *Chitty's Pl.* 270, 271. 1 *Bac. Abr.* 56, 57, 58. 4 *T. R.* 503.

*Bullitt* and *Lockerman*, who argued for the appellee, cited 1 *Chitty Pl.*, 270, 1, 4. 3 *Chitty Black.* 294, *note* 4. 1 *Bac. Abr.* 56, 7, 8. 4 *Term. R.* 503. *Acts of* 1728, *ch.* 24; 1714, *ch.* 4; 1787, *ch.* 87, *sec's.* 1, 4. 1 *Saund.* 241, *b. n.* 6. 1 *Wils.* 165. 6 *Bac. Abr.* 382, 385. 2 *Gill and Johns.* 374. *Cowp.* 176, 7. 1 *Strange,* 646. 6 *East.* 529. *Act of* 1801, *ch.* 74, *sec.* 11.

The opinion of the court was delivered by DORSEY, J.

The question we are called on to decide is, can a defendant, in a local action, arising in a different county, be sued in the county in which he resides. According to the common law it is admitted that he could not; the ancient requirements of that system being that the trial shall be had before a jury of the *vicinage,* who are presumed to be acquainted with the subject-matter to which the controversy relates, and therefore more competent to decide it than a jury of strangers. But it is alleged that this wholesome provision of the common law has been changed by acts of assembly to which we have been referred; and first of the act of 1728, ch. 4, which it is said is impliedly a repeal of that law; and places local actions to be commenced by *capias ad respondendum,* on the same footing with transitory actions, triable only in the county court within the jurisdiction of which the defendant resides. The act of 1728, neither in its spirit or its terms was intended to give to the county courts of the defendant's residence, jurisdiction over any subjects of litigation which they did not before possess. It enacts, " that it shall not be lawful for any person whatsoever to cause any inhabitant to be arrested out of the county where he or she doth reside, by virtue of any *capias ad respondendum* or *capias ad satisfaciendum,* for any debt, damages, or costs, until the sheriff or coroner of the county where the defendant shall reside, shall have returned a *non est inventus* on a *capias ad re-*

*spondendum,* or *capias ad satisfaciendum,* issued at the request of the said person against the said defendant." Not a word is contained in the law giving them any new jurisdiction ; its only object was to remedy an evil, heretofore existing, which was that, in transitory actions the inhabitants of the then province of *Maryland* were arrested, as stated in the preamble to that act of assembly, " when they shall happen to be found about their necessary affairs out of the county where they reside." It designed to throw around him no additional protection from arrest where, instead of being absent about his " necessary affairs," he was committing torts upon the real estate of the inhabitants of other counties. When so employed, neither justice nor policy would sanction the raising of such a legislative shield in his behalf: no such motive can rationally be imputed to the legislature. Their only design was to withdraw from all other county courts than that in which the defendant resided, jurisdiction over transitory actions against him ; and also to restrain the practice of the provincial court of issuing process to arrest an inhabitant of the State out of the county in which he resided.

That the discrimination between local and transitory actions was not destroyed by the act of 1728, is manifest from the act of 1785, ch. 87, sec. 4, entitled " an act concerning jurisdiction," which unequivocally recognizes the distinction in declaring " that if any person commits a trespass on real property, and shall remove from the shore on on which such property may lie, to the other shore, or cannot be taken on the shore on which such property may lie, such trespasser may be sued in the court of any county where he or she may be found, or in the general court of the shore in which he or she may be ; and if any trespass shall be committed on any real property, and the person committing the same shall remove from the county where such property may lie, or cannot be found in such county, such trespasser may be sued in any county where he or she may be found, or in the general court at the election of

the party injured." Now, if by the act of 1728, local and transitory actions were, as is insisted, placed on the same footing, all that is said in the act of 1785 about the locality of the real property on which the trespass was committed, is an unmeaning absurdity, the imputation of which, to one of the most enlightened legislative bodies that ever wielded the destinies of *Maryland*, would be an act of uncourteous rashness which no court of justice in this State would be guilty of, but under circumstances of much stronger necessity for its adoption than exist on the present occasion.

The same remarks are applicable to the 14th sec. of the act of 1796, ch. 43, which is simply a re-affirmation of the enacting clause before recited from the act of 1728, as was the 11th sec. of the act of 1801, ch. 43, but the re-adoption of the same enactment.

It is contended that, by the act of 1714, ch. 4, sec. 2, the power to try a local action in the county in which the defendant resides, instead of that where the cause of action accrued, is expressly given. This court have decided, that a case within the letter of a statute, but not within its spirit, is without the statute. The title of the act of 1714 is " an act for relieving the inhabitants of this province from some grievances in the prosecution of suits at law." The preamble, after reciting the ruinous condition in which many of the inhabitants of the province had been placed by " a late long and expensive war," and by heavy losses by enemies' captures, and deprivation of trade with *France* and *Spain*, declares " that very many honest and industrious planters, her Majesty's subjects here, by the very charges of necessary clothing and tools for themselves and families, are become vastly indebted, and no prospect as yet appearing of any means whereby they may extricate themselves out of their miserable and deplorable circumstances, which are very much heightened and aggravated by their being sued, and brought to *Annapolis* from the remotest parts of this province, to their manifest oppression and impoverishment, so that many of the good inhabitants of this

province daily desert their habitations, &c." The griev-ance to be remedied was, that many of the planters of the province being "vastly indebted," "were sued in the provincial court, and brought to the city of *Annapolis* from the remotest parts of this province." It was not intended by this act of assembly to give to the county courts where the defendants resided, any new jurisdiction except that expressly provided for, but to give them exclu-sive jurisdiction in all those cases whereof they already had cognizance in which the debt or damages did not ex-ceed £20 sterling or 5,000 lbs. of tobacco. The only new jurisdiction it gave to such county courts was the authority to try cases in which the real amount due did not exceed £20 sterling, but where the penalty of the bond given to secure its payment was for a much larger amount. No general jurisdiction was by this law exclusively given to the county courts. The 4th section declares that nothing therein contained should "debar or hinder any person from bringing his action in the provincial or superior court on any covenant or bond for the performance or sufferance of any act or acts, thing or things whatsoever, although the real damages or sum recovered be less than £20 sterling or 5,000 lbs. of tobacco," provided the penalty of the bond exceeded that sum; neither did it take from the provincial court any jurisdiction which it before possessed, as in ac-tions of detinue, replevin, waste, ejectment, &c. It can-not, therefore, upon any sound principle of construction, when not a word in the act of assembly, nor the reason on which it was founded, intimates such an intention, be said, that it was the design of the legislature to abolish all dis-tinction between local and transitory actions, when prose-cuted in the county courts, and where a recovery was had for not more than £20 sterling or 5,000 lbs. of tobacco. To give it this construction would produce this strange in-congruity. Sue a defendant in the county court of his residence in an action local in its character, and the cause of which originated in another county, if the amount re-

covered do not exceed £20 sterling or 5,000 lbs. of tobacco, the proceedings are instituted before the proper tribunal, but should the verdict exceed that amount, although within the limited sum of which county courts can "hold plea or cognizance," yet the whole proceedings are a nullity as *coram non judice.* And, further, if the plaintiff implead the defendant for the same cause of action in the county court of the county where it arose, and obtain the same verdict, the proceedings are all *coram judice,* and a judgment may be rendered upon them. But it is an unanswerable objection to the argument resting on this act of assembly, that it has long since expired, and consequently leaves the common law unaffected by its provisions.

It is also insisted that, by the aforesaid act of 1785, the right to maintain the present action is given in express terms. But a literal interpretation of this act would manifestly do violence to the intention of its framers: their object was merely to remove from the county courts those restrictions under which they had theretofore labored to convert them from tribunals of limited special jurisdiction into courts of general jurisdiction, and not to give them powers inconsistent with the principles of the general law of the land, and which the general court itself did not possess, that of taking cognizance of local actions arising without the limits of their territorial jurisdiction. In accordance with the design which we have imputed to them, the legislature, in the 1st section of said act of 1785, enact " that any person, after the end of this session of assembly, shall have full power to commence, prosecute, and carry on to final judgment, in the county court of the county where the defendant or defendants may reside, any action or suit at law whatsoever, whether the same be for recovery of any debt or damages, or of the right, or possession to, or of, any lands, tenements, or hereditaments, or of goods or chattels, by writ of replevin ; and the said several and respective county courts shall have full power and authority to hear and determine all such suits and actions."

Previously to this act of assembly the county courts had no authority to try cases where the debt or damages exceeded £100 sterling or 30,000 lbs. of tobacco, nor actions of replevin, or any suit to establish the right to, or recover the possession of any lands or tenements.   To supply these and such like deficiencies of power, and for no other purpose, was this section of the act of assembly adopted.   Give it a literal interpretation, and see the absurdities which follow.   If the general expressions used, give the jurisdiction alleged, and on the assumption of which, this action is founded, they, in terms equally strong, give to the county court, where the defendant resides, original cognizance of an action of ejectment for lands lying in a different county: that is, if *A*, the owner of lands lying in *Alleghany* county, live in *Worcester* county, he may there be sued to try the title of those lands.   Was such the intention of the General Assembly in passing this law?   How are you to deliver possession of the lands, for the recovery of which a judgment may pass?   How are you to locate the lands in question, to enable you to determine the true location thereof?   Will you send your sheriff and surveyor from *Worcester* to *Alleghany* for that purpose?   Are not surveys as necessary in actions of *trespass quare clausum fregit*, and perhaps too, in actions of waste, where locations of land are in controversy, as in those of ejectment?   They are all local actions, for reasons in their nature similar; and the General Assembly no more designed an interference with the one than the other.   The counsel on both sides admit, that actions of ejectment and waste are still unaffected by this act of assembly.   The same latitude of construction which makes these actions, exceptions, will justify an exemption of all local actions from the operation of the law.

But the 4th section of the law silences all discussion on the subject.   It interprets the 1st section in a way, that puts an end to all cavilling about it, by explicitly recognizing the doctrine, that local actions remained cognizable as theretofore in the judicial tribunals, within whose cogni-

zance the land, the parent of those actions, may lie; and only authorises *ex necessitate rei*, a departure from the principle in two cases.   One of which is, that if a trespasser on real property " remove from the county where such property may lie, or cannot be found in such county, such trespasser may be sued in any county where he or she may be found, or in the general court, at the election of the party injured." The 4th section of this act of assembly thus unequivocally explains and limits the generality of the expressions in the 1st section, and demonstrates that the legislature intended no change in the character or prosecution of local actions, but in the cases especially provided for, where, but for such provision, there would be an utter failure of justice.

It is admitted that the present is a local action, as the cause of action could not have originated in any other county, than that, in which the land was situated, whereon the waste was committed.   As to the wisdom or expediency of breaking down the well known distinctions between local and transitory actions, (a theme of much discussion in the case,) it is a subject for the consideration of the General Assembly of *Maryland*, rather than one, on which this court can be called on judicially to decide.   The doctrine of local and transitory actions is a part of the common law which followed our ancestors in their emigration to this State, and became a part of the law of the land ; to effect any change in it, the action of the legislative power only is competent.

Had the plaintiff alleged in his declaration, that the defendant had removed out of the county where the property wasted " may lie, or cannot be found in such county," the defendant's demurrer would have been over-ruled, and upon proof of such allegation, the plaintiff would have been *rectus in curia*, and entitled to recover according to his merits; not having done so, the demurrer was properly sustained.

Concurring with the *pro forma* decision of the county court,                                   JUDGMENT AFFIRMED.