ROBERT P. GRAHAM, Comptroller of the Treasury, and THOMAS J. SHRYOCK, Treasurer of Maryland, *vs.* THE COUNTY COMMISSIONERS OF HARFORD COUNTY.

*Jurisdiction of ·Circuit Court—Injunction Against State Officer— Taxation of Rolling Stock of Railroad Companies—Apportionment Thereof Among Counties—Appeal—Judicial Notice of Public Statutes.*

Code, Art. 16, sec. 71, provides that each of the Circuit Judges may grant injunctions to take effect in any part of his circuit. *Held,* that the Circuit Court of one county has no authority to issue an injunction restraining a fiscal officer of the State who does not reside in that county, from doing an act beyond the limits of the county, respecting property not there situated.

Under the Acts of 1896, chap. 120 and chap. 140, the State Tax Commissioner is directed to divide the total value of the rolling stock of railroad companies as returned to him among the several counties through which they run, according to the mileage of the roadbed in such counties, and to certify the apportionment to the counties for the purpose of taxation. From this apportionment the statute provides that an appeal may be taken to the Comptroller and Treasurer. After such appeal was taken from the apportionment to Harford County of the value of the rolling stock of a railroad the County Commissioners of that county filed a bill asking for an injunction to restrain the Comptroller and Treasurer from reducing or interfering with the apportionment. *Held,* that since the Comptroller and Treasurer were expressly authorized by statute to review the apportionment made by the Tax Commissioner and to re-adjust the same, the Court had no power to grant the injunction asked for.

The Court is bound to take notice of the public statutes of the State, and the allegations of a bill in equity respecting the duties of public officers will be construed in connection with the provisions of the statute law.

Appeal from an order of the Circuit Court for Harford County (WATTERS, J.), by which an injunction was issued as prayed with leave to defendants, upon filing answers to move for the dissolution of the same.

The cause was argued before McSHERRY, C. J., BRYAN,

VOL. 87 21

FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Feb. 8, 1898).

*Harry M. Clabaugh, Attorney-General,* for the appellant.

*George Y. Maynadier,* for the appellees.

1st. Has the Circuit Court for Harford County, as a Court of Equity, jurisdiction to grant the relief by injunction prayed for in the bill of complaint? For convenience of valuation and assessment the *situs* of the rolling stock of railroads operated by steam shall be considered to be in the assessment district in which are located their principal places of business, &c. The several Boards of Control and Review, when such rolling stock is valued and assessed in their respective districts, according to the above directions, report the same to the State Tax Commissioner, who apportions such assessment to the several counties or cities, for purposes of county and municipal taxation, according to the mileage therein respectively of such railroads, which apportionment ascertains that portion in value of the railroad rolling stock, we contend, as property located in and belonging to the county through which the railroad passes, for purposes of county taxation. *Act of 1896,* chap. 120, sec. 178; *Same,* chap. 140, sec. 199; *Carroll* v. *Lee,* 3 G. & J., 509; *Binney's case,* 2 Bland, 144–146; *State* v. *P., W. & B. Railroad Co.,* 45 Md. 361; *Keyser* v. *Rice,* 47 Md. 203, 211.

2d. The Comptroller and Treasurer propose to sit with the Tax Commissioner, after his apportionment of the valuation and assessment of the rolling stock of the P., W. & B. Railroad Company had been made and certified to the County Commissioners of Harford County, in accordance with the Assessment Act, in July, 1897, as a Board of Appeal, and reapportion the share of such valuation to Harford County. This, we contend, they have no warrant or authority for doing or attempting to do, as no such authority is conferred by the assessment law of 1896 or by Art. 81 of the Code of Public General Laws.

3d. Has the Court jurisdiction to restrain them? The Comptroller and Treasurer are State's officers, whose official and business acts are co-extensive with the boundaries of the State. Their offices are located at the seat of the State government, but no Act of Assembly confers sole jurisdiction on the Circuit Court for Anne Arundel County in regard to their official acts that we are aware of. Neither are they officially resident in the county and city of their respective domicile more than in any other county and city of the State. *State* v. *Jarrett & Harwood,* 17 Md. 310.

4th. Has a Court of Equity jurisdiction to enjoin the actions of a State official. We submit that, as no objection was made on the part of Harwood, State Treasurer, either as to residence or being exempt from equity control, in the case above cited, it is an authority of weight to sustain both of our propositions as to jurisdiction, namely, residence and amenability to equity for his official acts. *State* v. *Jarrett & Harwood,* 17 Md. 310. As to control by injunction of public officials. *Binney's case,* 2 Bland, 144 *et seq.*; 2 *Story's Eq. Juris.* (5 ed.), sec. 955, p. 286, referring to *Frewin* v. *Lewis,* 4 Mylne & Craig, 254; 2 *Story's Eq. Juris.,* sec. 959 *b.,* pages 291–2, note 1.

McSHERRY, C. J., delivered the opinion of the Court.

By sec. 178, ch. 120 and by sec. 199, ch. 140 of the Acts of Assembly of 1896, provision is made for the valuation and assessment of the rolling stock of railway companies for purposes of county and municipal taxation. In substance these sections enact that the *situs* of such rolling stock shall be taken and considered to be in the assessment district in which the company's principal place of business is located; that the total valuation shall be made there and that for the purposes of county and municipal taxation this total valuation shall be divided amongst the counties and the city of Baltimore in proportion to the mileage of roadbed located in the counties and in the city respectively. The several Boards of Control and Review are required to

make reports to the State Tax Commissioner as to the total valuations of such rolling stock so made up in the assessment district of its *situs*; and it is thereupon declared to be the duty of the State Tax Commissioner to apportion and divide the total valuation amongst the counties and the city of Baltimore according to the mileage of roadbed therein respectively. Sec. 199 then goes on to declare, " and after having made such apportionment or division thereof, he (the State Tax Commissioner) shall certify to the respective boards of County Commissioners of the several counties and to the Appeal Tax Court of Baltimore City the amount of the proportion of the valuation of such rolling stock to which each such county or the said city is so entitled; and such proportions respectively shall thereafter be valued and assessed for purposes of taxation in such respective counties or said city, *subject to the right of appeal as in other cases in this article.*"

Under these and other provisions of the general Assessment Act of eighteen hundred and ninety-six the rolling stock owned by the Philadelphia, Wilmington and Baltimore Railroad Company was valued and assessed in assessment district number three of Baltimore City; the total valuation thereof was returned by the Board of Control and Review to the State Tax Commissioner who at once made an apportionment and division of the whole between the city and the several counties of this State through which the railroad is located, and ascertained upon the mileage basis, that the amount chargeable to the company for county taxation in Harford County was $550,202.81, which amount he forthwith certified to the County Commissioners of that county. From this apportionment the railroad company took an appeal to the Comptroller of the State Treasury and to the Treasurer of Maryland. Pending that appeal which from aught that appears to the contrary is still undisposed of, the County Commissioners of Harford County filed in the Circuit Court for Harford County, the bill of complaint to be found in the record now before us. This

bill, after making allusion to the assessment, apportionment and appeal just adverted to, alleges that the Comptroller and Treasurer are proceeding to hear and determine questions relative to the amount so apportioned to Harford County, and that they are about to interfere with said apportionment and to largely reduce the amount thereof under pretence of reviewing the same as a board of appeal ; which action, it is charged, is without any legal authority or warrant of law.    The bill then prays for an injunction to restrain the Comptroller and the Treasurer from interfering in any manner with, and from disturbing by any action whatever on their part, the apportionment of $550,202.81 so made by the State Tax Commissioner.    Upon this bill an *ex-parte* order was passed directing the injunction to issue as prayed ; and accordingly three writs went out, one to Baltimore City, one to Anne Arundel County and one to Wicomico County.    The writ issued to Baltimore City was served on both the Comptroller and Treasurer ; that to Wicomico was served on the Comptroller and that to Anne Arundel was returned indorsed *non sunt.*    The defendants appeared solely for the purpose of contesting the jurisdiction of the Court and filed a demurrer to the bill.    They then immediately appealed to this Court from the order granting the injunction.

It is nowhere averred in the bill that either of the defendants is a resident of Harford County, and apart from all other questions in the case, it is insisted that, in the absence of an appropriate allegation showing that the defendants were or that one of them was within the Court's jurisdiction or that the subject-matter of the proceeding was, the Court below possessed no power to order the injunction to be issued.    Not only does the bill fail to aver that the defendants were within the limits of the Court's jurisdiction, but docket entries affirmatively show that they were not, for no writ was directed to them in Harford County, but three were sent to other circuits in the State.    It cannot be pretended that the Circuit Court for Harford County has au-

thority to restrain by injunction the fiscal officers of the
State who do not reside or are not found within that county,
from doing some act, beyond the limits of the county, re-
specting property not actually situated in the county ; with-
out conceding to every other Circuit Court in the State a like
and an equal power.    And if each Circuit Court possesses,
under these conditions, the power to issue an injunction to
operate beyond the territory over which its jurisdiction ex-
tends and against persons not amenable to its ordinary pro-
cess, and to inhibit the doing of an act not attempted or
intended to be done within the county over which the Court's
jurisdiction does reach and when the act prohibited has no
relation to property actually or constructively within the
county ; then that power is not to be found either in the
Constitution or the Statutes of the State.    In the very na-
ture of things no such jurisdiction can be maintained.    To
uphold it in this instance would, as just suggested, be to
admit its existence in every other Court of Equity in Mary-
land and the result certainly might be, that the State's offi-
cers would be proceeded against, not where they reside or
even where they transact the public business, but wherever a
plaintiff who sought to subject their official functions to the
control of a Court of Equity, might happen to live.    This
would lead to endless confusion, if it did not practically
cripple the efficiency of the officers themselves ; and besides
it would materially amplify the authority conferred by statute
upon the Courts.    " Each of the Circuit Judges may grant
injunctions, or pass orders or decrees in equity    *    *    *
*to take effect, in any part of his circuit,"* is the language of
sec. 71 of Art. 16 of the Code.    The *thing* which the in-
junction restrains the defendants from doing, is a review by
them of an apportionment made by the State Tax Commis-
sioner.    That apportionment was an apportionment of the
assessed value of rolling stock having no actual or con-
structive *situs,* in Harford County—its *situs* being fixed by
the statute at the place where the company owning it has
its principal office in Maryland—and that, as the bill read in

the light of the enactment shows, was in Baltimore City.
The Circuit Court for Harford County undertook by an
injunction to restrain State officers, not within its jurisdic-
tion, from reviewing the determination of another State offi-
cer made beyond the Court's jurisdiction respecting the
division of an assessment of rolling stock not situated within
its jurisdiction; and the power to do this was rested in the
argument upon the assumption that the Comptroller and the
Treasurer are State's officers whose official acts are co-ex-
tensive with the boundaries of the State.   The jurisdiction
of the Court is thus made to depend, not upon the residence
of the defendants nor upon the location of the subject-mat-
ter of the controversy, but solely upon an independent, ac-
cidental circumstance that the parties who are proceeded
against in a special capacity, have, when acting in a different
capacity as State officers, authority that is effective through-
out the State.   But the question before us is not as to
whether the Comptroller's or the Treasurer's acts, done as
Comptroller or as Treasurer, are co-extensive with the limits
of the State.   The question is as to how far the jurisdiction
of the Circuit Court reaches ; and that jurisdiction in no
manner depends upon the amplitude of some State officials'
ordinary authority.   The executive authority of the Gover-
nor stretches over the whole State, but it will hardly be
seriously contended that every Circuit Court in the com-
monwealth, even those in the counties most remote from
the seat of government, has, as a consequence, jurisdiction
to issue a *mandamus* or an injunction against him in his
official capacity.   The fallacy of the contention lies in the
assumption that the territory within which the Circuit Court
may exercise jurisdiction is defined by and co-incident with
the territory within which the official acts of the Comp-
troller and the Treasurer, *as* Comptroller and Treasurer, are
effective ; whereas the Court's jurisdiction is a subject
wholly and essentially independent of considerations of that
character.   The two things—the scope of the Comptroller's
and the Treasurer's authority, and the extent of the Court's

jurisdiction—are intrinsically dissimilar. Neither is dependent on nor related to, the other, nor does one furnish a measure of power to which the other can, in any respect, be compared.

. But there is another and a broader reason why the injunction ought not to have been issued. It will be remembered that that portion of sec. 199 which in the beginning of this opinion was transcribed, expressly provides that the action of the State Tax Commissioner in making the apportionment of the total valuations of rolling stock, shall be " subject to the right of appeal as in other cases in this article." The phrase " this article" means Art. 81 of the Code of Public General Laws ; and Art. 81 relates to revenue and taxes. There is an appeal provided from the State Tax Commissioner to the Comptroller and Treasurer under secs. 132 and 144 of Art. 81. It is true sec. 144 relates to the assessment of shares of stock in banks and other corporations, but it distinctly and in terms gives an appeal, as just stated, to the tribunal just named. There is no appeal allowed from the State Tax Commissioner, in any instance, to any tribunal other than to the Comptroller and Treasurer. Consequently when the 199th section of ch. 140 of the Acts of 1896 permitted an appeal from the State Tax Commissioner on the apportionment of the total valuation of rolling stock, and permitted that appeal to be taken " as in other cases in this article," it authorized an appeal to the same tribunal to which other appeals were given from him by antecedent sections of Art. 81; and that tribunal is the one composed of the Comptroller and the Treasurer, as there is no other to which an appeal from the State Tax Commissioner will lie. As, then, an appeal is explicitly given by the Act of 1896 from the State Tax Commissioner's apportionment ; and as by necessary and irresistible implication it is to be heard by the Comptroller and Treasurer, not in virtue of their general powers, but solely because they have been specially selected to hear it ; the appeal taken by the railroad company was a lawful act ;

and as the only purpose to be subserved by such an appeal would be to procure a review of the determination reached by the State Tax Commissioner, it is obvious that the tribunal to which the appeal is authorized to be carried has jurisdiction to entertain it, and if to entertain it, then to revise and either to affirm or to readjust the apportionment from which the appeal was taken. The right to appeal would be utterly idle and meaningless if the tribunal to which the appeal is transmitted were without authority to review the apportionment complained of; and it is, therefore, perfectly manifest that the Comptroller and Treasurer have, under the statute, jurisdiction to rejudge the adjustment made by the Tax Commissioner. We are not called on, and it would not be proper to express a definite opinion as to the extent of the power of the Comptroller and Treasurer on such an appeal—it is only necessary to determine that an appeal is provided for. Being provided for it was lawful to enter it ; and it being lawful to enter and prosecute the appeal, the Court below had no power to restrain the Comptroller and Treasurer from entertaining it.

In dealing with the bill of complaint, whose sufficiency is brought before us by the appeal, we are not precluded by its averments from looking to the public statute law of the State, and if that law advises us, as it does, that some of the allegations or averments are not simply as they are therein stated, it is our duty to interpret them so as to make them read as if set out in connection with the provisions of the statute (*State* v. *Jarrett & Harwood*, 17 Md. 325); and this being so we are at once apprised that the acts of the Comptroller and Treasurer in undertaking to review the apportionment are *not* without warrant of law or legal authority.

It results from the views we have expressed that the injunction should not have been granted and that the order directing it to issue must be reversed and the bill must be dismissed.

*Order reversed with costs above and*
*below, and bill dismissed.*