ECK ET AL. *v.* STATE TAX COMMISSION OF
MARYLAND ET AL.

[No. 105, October Term, 1953.]

*Decided March 23, 1954.*

*Motion for rehearing and modification filed April 21, 1954, denied April 30, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James P. Parker* and *Ward E. Boote* for the appellants.

*Francis D. Murnaghan, Jr., Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the members of the State Tax Commission.

*Joe M. Kyle, Assistant County Attorney for Montgomery County,* with whom was *David Macdonald, County Attorney,* on the brief, for the members of the Appeal Tax Court.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County, granting a motion to dismiss a petition for *mandamus* filed May 29, 1953, against the members of the State Tax Commission of Maryland and entering a judgment of *non pros* as to them; and sustaining a demurrer to the petition as against the members of the Appeal Tax Court for Montgomery

County and dismissing the petition as to them. In the same order the demurrer of Wilton T. Allen, Supervisor of Assessments for Montgomery County, was overruled, with leave to answer. Believing that an appeal would be premature, no appeal was taken from that action and the matter is not now before us.

In the case of the State Tax Commission, the only question before us is one of venue. The members of the Commission, having been served with summons directed to the Sheriff of Baltimore City, appeared specially and filed a motion to dismiss on the grounds that "as the State Tax Commission of Maryland, they maintain their office and transact their business pertaining thereto in the City of Baltimore, and, therefore, for all the matters and things which may be inquired into in judicial proceedings relating to their duties aforesaid, they are amenable to suit only in the City of Baltimore." The petition had alleged, as to the members of the State Tax Commission, their failure to perform certain duties required of them by Article 81, Sections 230 and 239 of the 1951 Code, resulting in a lack of statewide uniformity. The prayer of the petition was that they be required to perform their statutory duties, particularly those relating to assessment procedure and standardization in the use of reports of sales. The Attorney General concedes, for present purposes, that the appeal from the judgment of *non pros* is not premature. Cf. *Northwestern Nat. Ins. Co. v. Rosoff*, 195 Md. 421.

The appellants contend that the English Statute, 21 Jac. 1 chap. 12, is still in force in Maryland, by virtue of Article 5 of the Declaration of Rights, and is declaratory of the common law, although not applicable to acts of omission or neglect as distinguished from positive or affirmative acts. They contend that at common law a public officer could be sued in a transitory action wherever found, and the rule has not been changed by Section 158, Article 75 of the 1951 Code, which they say is inapplicable to public officers.

The portion of the statute, 21 Jac. 1, Ch. 12 (1623), set out in 2 *Alexander's British Statutes* (2d ed.) 589, merely extended the expiration date of, and enlarged to include churchwardens, the earlier statute, 7 Jac. 1, Ch. 5 (1609). This statute allowed a general issue plea to be filed by certain public officers when sued in actions *ex delicto* and special justification to be given in evidence under that plea. 2 *Alexander's British Statutes* (2d ed.) 584. Other provisions of 21 Jac. 1, Ch. 12, including the provision that the action could only be brought where the tortious act was committed, were not printed by Alexander. It is stated in a note (p. 590) that "that part of the latter act, respecting the county in which suits are to be brought and double costs, did not extend to the province. * * *." This statement paraphrased a statement to the same effect in Kilty's Report (1811) p. 237. We regard these statements as conclusive. Cf. *Day v. Day,* 4 Md. 262, 271. They are consistent with the conclusion reached by the courts of other states. *Gardner v. Keihl,* 37 A. 829 (Pa.) ; *Burger v. Parker,* 290 S. W. 22 (Tenn.) ; *Pearce v. Atwood,* 13 Mass. 324 (1816). In any event, the portion omitted by Chancellor Kilty could not avail the appellants here, because it localized the action to the place where the tortious act was committed, and was inapplicable to failures to act in any event. The appellants invoke the statute only to argue that it effected a change in the common law, upon which they rely.

Originally, as a term of English law, "venue" signified the neighborhood from which the jurors, as witnesses of the facts in issue, had to be drawn. 5 *Holdsworth's History of English Law* 117. This early concept of fact-venue was altered to one of action-venue, by means of a legal fiction, which in turn gave rise to the well-established distinction between local and transitory actions. *Patterson v. Wilson,* 6 G. & J. 499, 500 (1834) ; *Crook v. Pitcher,* 61 Md. 510, 513; *Gunther v. Dranbauer,* 86 Md. 1, 6; *Superior Constr. Co. v. Elmo,* 204 Md. 1. A transitory action was conceived of as one that, in the

nature of things, could have happened anywhere and in such a case the rule was that a defendant could be sued wherever found. Thus, we have recognized that in cases to which the venue statutes are not applicable, as in the case of a non-resident defendant, a transitory action will lie in any court of the State. *Alcarese v. Stinger,* 197 Md. 236, 244, citing 2 *Alexander's British Statutes* (2d ed.) 659.

The common law rule that a transitory action would lie wherever the defendant could be reached with process, applied to public officers as well as to private individuals. See *Foster v. Baldwin,* 2 Mass. 569 (1786); *State v. Green,* 5 Harr. (Del.) 270 (1848); Note, Ann. Cases 1912C, 345. Indeed, it was this very fact that prompted the enactment of 21 Jac. 1, Ch. 12. The preamble of that Act contained this recital: "Whereas the plaintiff is at liberty to lay his action which he shall bring against any justice of the peace or other officer in any foreign county at his choice, which hath proved very inconvenient unto sundry of the officers and persons aforesaid, that have been impleaded by some contentious and troublesome persons, in counties far remote from their places of habitation." Variants of this Act have been enacted in most of the American states, although not in Maryland. In some statutes the relief was extended to acts of omission as well as commission. For a summary of the statutes, see 40 Cyc. 88.

The crucial question is whether the common law rule has been modified by the general venue statute, now appearing as Section 158, Article 75 of the 1951 Code. This section provides that "no person shall be sued out of the county in which he resides * * * provided * * * that any person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county, may be sued in either county, whether before a justice of the peace or in a court of law or equity; this section not to apply to ejectment, dower, replevin, scire facias on judgment or decree, nor to heirs, devisees or terre-

tenants, against whom process may be issued to another county." The restriction as to residence was contained in Chapter 74, Acts of 1801, Sections 11 and 12, which readopted similar provisions enacted by Chapter 4, Acts of 1714 and Chapter 24, Acts of 1728. *Patterson v. Wilson, supra* (p. 502) ; *Cape Sable Company's Case,* 3 Bland 606, 664. The proviso giving an alternative where the defendant carries on a regular business or habitually engages in any avocation or employment outside the county of residence, was added by Chapter 456, Acts of 1888. We find nothing in the historical background that would indicate a legislative intention to exclude public officials from the all-inclusive word "person." The argument of inconvenience, that prompted the enactment, would apply to a public officer with even more force than to a private individual.

In *Graham v. Harford County,* 87 Md. 321, an injunction proceeding was brought in Harford County against the State Comptroller and State Treasurer, neither of whom resided there and whose official place of business was in Anne Arundel County, to enjoin them from reviewing an apportionment of the tax on rolling stock of a railroad made by the State Tax Commission. They were duly summoned and, appearing solely to contest the jurisdiction, filed a demurrer to the bill. It was held that the Harford County court had no jurisdiction. Although the venue statute was not cited, it seems clear that Chief Judge McSherry had it in mind, for he spoke of the confusion and public detriment that might result if public officers could be sued "not where they reside or even where they transact the public business." It was conceded there, as it is in the instant case, that the subject matter was not localized to the place where the suit was brought.

In *Phillips v. Baltimore,* 110 Md. 431, it was held that a municipal corporation could not be sued outside of its territorial limits in a transitory action, although in the earlier case of *Baltimore City v. Turnpike Co.,* 104 Md. 351, it had been held that this rule could not

prevail in the case of a local action for trespass to land. The rule applied in the *Phillips* case, although it is not universal and has been subject to criticism, is supported by substantial authority. See *Nashville v. Webb*, 85 S. W. 404 (Tenn.) ; note 93 A. L. R. 500 ; 17 *McQuillan, Municipal Corporations* (3d ed.) § 49.15. It seems to have no counterpart in the English practice. In holding that the statute dealing with the venue of suits against corporations, Section 62, Article 23, Acts of 1908, Chapter 240 (Section 91, Article 23, Code of 1951), did not apply to municipal corporations, the court relied upon the inconvenience to the conduct of the public business as requiring an exception to be read into the statute "under the established rules of legislative interpretation." Likewise, the court held that the general venue statute was inapplicable to municipal corporations, as distinguished from other corporations. *Henderson v. Md. Home Ins. Co.*, 90 Md. 47.

In *Sun Cab Co. v. Cloud*, 162 Md. 419, an injunction proceeding was brought against the Supervisors of Elections of Baltimore City, to enjoin a referendum. The Secretary of State was joined and entered a general appearance. The Sun Cab Company intervened as defendant and demurred on the ground that the Secretary of State, "whose official residence is at Annapolis, cannot be sued, and cannot submit to be sued, in Baltimore City." Chief Judge Bond, speaking for the Court, held that the Secretary of State was properly a party by reason of his general appearance. He pointed out that venue, at least in its intrastate aspects, is not a matter touching the jurisdiction of the court, so that it can be waived. Cf. *Superior Constr. Co. v. Elmo, supra; Howell v. Beth.-Spar. Pt. Shipyard*, 190 Md. 704, 711 ; *Ireton v. Baltimore*, 61 Md. 432. There is, however, language in the opinion analogizing actions against public officers to those against municipal corporations, and stressing the public inconvenience that might be caused in either case. We have shown that, historically, they have not been considered in the same category.

The general venue statute was not cited, but it was said: *"The rule confining suits to official residences, so far as it applies, is a rule of convenience * * *,* and convenience does not require that, when officials of different residences are, *apart from any question of venue,* properly to be proceeded against jointly, they must nevertheless, in case of residence in different jurisdictions, be proceeded against in separate suits. Convenience requires the contrary; and insistence of the court upon separate suits under those circumstances would be inconvenient and without reason." (Italics ours.) The propriety of proceeding jointly against the State Tax Commission and the Appeal Tax Court for Montgomery County, for failure to perform the separate duties imposed by statute and covering a different territorial range, is certainly open to question, and might well distinguish the cases. In any event, there is a clear distinction in the fact that the point as to joinder is covered in an equity proceeding by Section 105, Article 16 of the 1951 Code, which permits suit in any jurisdiction where one of the parties resides. *Hopper v. Brodie,* 130 Md. 443. There is no similar provision in the case of actions at law, except as to actions *ex contractu.* Chapter 206, Acts of 1953. But see Ch. 60, Acts of 1954, effective June 1, 1954.

There is much to be said for the doctrine of convenience, and judicial discretion in determining it, both in the case of individuals and public officers, as well as in the case of municipal corporations. In England, it would seem that, although transitory actions could be brought anywhere, the practice was for the courts to freely grant a change of venue, to suit the convenience of the parties. *Knight v. Farnaby,* 2 Salk. 670 (1706). This practice is preserved under the Judicature Act of 1875. However, we think the matter is covered by our general venue statute, and that public officers are within its scope. The point was not waived in the instant case, but distinctly asserted. If a balance of convenience is to be the test, the change should be brought about by

legislative action, or perhaps, by rule of court. Since none of the members of the State Tax Commission reside in Montgomery County and its principal office is in Baltimore City under Section 225, Article 81 of the 1951 Code, we find no error in the entry of the judgment of *non pros* as to them.

The action of the court in dismissing the petition as against the Appeal Tax Court for Montgomery County was on the broader ground that there were no sufficient allegations of necessity. The petition alleged that the members of this body are residents of Montgomery County; that they "have not been furnished and therefore have not considered reports of current property sales in the county with conditions attending such sales, including the price thereof, for the reason that such sales reports since on or about April 30, 1952, were not prepared or submitted to said defendants by the Montgomery County Supervisor of Assessments although requested for use by the said court in connection with their current general reassessment of property in Montgomery County," but these appellees "proceeded to make current assessments on the residential properties of the said county * * * all of which has resulted in arbitrary, capricious, discriminatory, fraudulent and illegal assessments and the current assessment rolls are therefore invalid."

The writ of *mandamus* is sought to compel them to perform the duties imposed by Section 232, Article 81 of the 1951 Code, "under which the said defendants, in their official capacity as members of the Appeal Tax Court for Montgomery County, are required to have reports of property sales in the county with conditions attending such sales, including the sale price thereof, and on the basis of such reports and the evidence obtainable to determine whether the assessments against any property or any unit of assessment value in any district shall be changed." Specifically the prayer was for a writ of *mandamus* commanding them "(a) before making, changing or reviewing any assessments and

as a condition in respect to any action of such nature, to consider reports of property sales * * *" and "(b) to continue in effect during the current year all assessments previously made so as to continue in force, until changed pursuant to the directions and actions required by this writ, such assessments as were last made during the year 1948-1949."

*Mandamus* is a remedial writ of wide scope, and there are numerous instances of its issuance to compel performance of a statutory duty. Cf. *County Commrs. of A. A. Co. v. Buch,* 190 Md. 394; *Holland v. Co. Comm'rs. of Baltimore County,* 46 Md. 621; and *Maxwell v. Baldwin,* 40 Md. 273. These appellees contend that the issuance of the writ would be nugatory because their authority has been exhausted with respect to existing assessments which became final on May 1, 1953, prior to the filing of the petition, and as to future assessments it cannot be assumed that the defendants will fail to exercise their statutory duty. They rely chiefly upon the case of *Comms. of Pub. Sch. v. Co. Comms.,* 20 Md. 449. As to past assessments, we think the assessments which became final prior to the filing of the bill cannot be disturbed in this proceeding, whatever remedy might be open in a direct attack upon the validity of particular assessments. Obviously, there could be no justification for reinstating assessments made five years ago. *Rogan v. Commrs. of Calvert County,* 194 Md. 299, 311.

As to future assessments, the problem is somewhat different. The authority to assess is not lost by the mere passage of the date of finality, at least in the case of escaped property. Section 202, Article 81 of the 1951 Code (Section 143, Chapter 226, Acts of 1929). The rule announced in *Comms. of Pub. Sch. v. Co. Comms., supra,* was more clearly stated by Judge Offutt in *Dorsey v. Ennis,* 167 Md. 444: "Commonly, the right to the writ of *mandamus* depends upon facts, circumstances and conditions existing at the time the petition is filed * * *, and, ordinarily, it will not issue to enforce a duty which does not exist at the time the application is made

* * *, and, although there is authority for the proposition that it may under exceptional and extraordinary circumstances issue to prevent an anticipated breach of duty * * *, the rule that the duty must exist at the time application for the writ is made seems to be supported by the weight of authority, and is consistent with former decisions of this Court (*Commrs. of Public Schools v. County Commrs.*, 20 Md. 460; *Sterling v. McMaster*, 82 Md. 167 * * *)."

The rule that *mandamus* will not issue for an anticipated wrong has been strongly criticized. *Attorney General v. Boston*, 123 Mass. 460, 472 et seq., (Gray, C. J.); *Berkey v. Board of Com'rs.*, 110 Pac. 197 (Col.); *State v. Stannard*, 165 Pac. 566 (Ore.). Even where it is conceded as a correct statement of the law, the exception has been extended to cases where there is a threatened act or failure to act, based on a refusal or past course of conduct. *State v. Payne*, 63 P. 2d 921 (Nev.); *Gunthersville v. Henry*, 133 So. 5 (Ala.); *North Carolina Public Service Co. v. Southern Power Co.*, 104 S. E. 872 (N. C.); *People v. Smith*, 99 N. E. 568 (N. Y.); *State v. Austin*, 110 N. E. 2d 134 (Ohio).

The difficulty in the instant case is that even if we assume, without deciding, that the writ may issue, under some circumstances at least, for an anticipated wrong, there are no allegations of a refusal to consider sales data by the Appeal Tax Court, or of circumstances from which an intention to refuse could be inferred. Cf. *Kinlein v. M. & C. C. of Balt.*, 118 Md. 576. The allegation is that the Supervisor did not supply such data in spite of the request for it by the Appeal Tax Court. There is no allegation that the Appeal Tax Court did not obtain data from other sources as they are authorized to do by Section 232, Article 81 of the 1951 Code. If the Supervisor supplies the data voluntarily, or pursuant to *mandamus*, if issued, we find nothing in the allegations to indicate that the Appeal Tax Court will not give proper consideration to the data supplied. The issuance of a *mandamus* as to them would seem to be quite unnecessary.

We find no error in the ruling as to the Appeal Tax Court, under the circumstances.

*Orders affirmed, with costs.*