536 A.2d 694

**Carol SWANSON et al.,**

v.

**Hugh F. WILDE, Sr. t/a The Tides Motel.**

**No. 1332, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 3, 1988.

Certiorari Granted April 25, 1988.

58

John Marshall (Moldawer & Marshall, P.C., Rockville, Cynthia Callahan and Brodsky, Greenblatt, Renehan Chartered on the brief), Gaithersburg, for appellants.

Jayson L. Spiegel (Joel M. Savits, Geoffrey T. Hervey and Jordan Coyne Savits & Lopata, on the brief), Rockville, for appellee.

Argued before MOYLAN, WILNER and GARRITY, JJ.

WILNER, Judge.

In a complaint filed in the Circuit Court for Montgomery County, Carol Swanson and David Brunzell, individually and as parents and guardians of James Brunzell, sued to recover substantial damages for injuries received by their son on June 16, 1986. They claimed that, in the early morning hours of that day, James was brutally attacked by three assailants—Ralph Caparotti, Jr., Scott Daymude, and Stephen Hansberger—as he stood in a courtyard at the Tides Motel in Ocean City, Maryland (Worcester County).

The action was against the three alleged assailants and the owner of the motel, Hugh L. Wilde, Sr. Though it was based entirely on the allegedly unprovoked attack on James, several theories of liability were pled. In Counts I through VI, the plaintiffs sued Caparotti, Daymude, and Hansberger for assault and battery, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. In Counts VII through X, they sued Wilde for negligence and breach of implied warranty of safe lodging. Count XI, by the parents individually, was against all defendants for loss of their son's services.

Caparotti and Daymude are residents of Montgomery County, as are the plaintiffs; Hansberger lives in Frederick County. Those defendants answered the complaint, denying liability.

▮ Claiming that he resides and does business exclusively in Worcester County, where the causes of action

arose, Mr. Wilde moved to dismiss the complaint, arguing improper venue as to him. The Circuit Court agreed with his reasoning, dismissed him from the case, denied plaintiffs' motion for reconsideration,[1] and ultimately entered final judgment for Wilde pursuant to Md.Rule 2–602, finding no just cause for delay. This appeal ensued, the parties electing to proceed pursuant to the expedited appeal rule (current Rule 1029, future Rule 8–207).[2]

The sole issue before us is one of venue; under the circumstances indicated, does an action against Mr. Wilde lie in Montgomery County? To resolve that issue, we must examine the relationship among §§ 6–201(a), 6–201(b), and 6–202(8) of the Cts. & Jud. Proc. article, all being part of the subtitle on venue.

Section 6–201 provides:

"**§ 6–201.  General rule.**

(a)  *Civil actions*—Subject to the provisions of §§ 6–202 and 6–203 and unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or

---

**1.**  Although there is no discernible harm in referring to a post-judgment motion under Md.Rule 2–534 or 2–535 as a motion "for reconsideration," such a motion is really one seeking to revise a judgment and should be captioned accordingly.  Compare current Md.Rules 850 and 1050 (future Rule 8–605).

**2.**  Appellee has moved to dismiss this appeal on the grounds that (1) the order of the trial judge is not a "final" order, (2) this is not an "infrequent harsh case," and (3) the appeal violates "Maryland's established policy of avoiding piecemeal appeals."  We reject appellee's arguments and therefore deny the motion.  In so doing, we are mindful that "a prerequisite for the invocation of the certification procedure embodied in Rule 2–602(b) is an order which, absent the circumstances of multiple parties or multiple claims, would be final in the traditional sense." *Planning Board v. Mortimer,* 310 Md. 639, 651, 530 A.2d 1237 (1987).  Clearly, the trial court's order was final; it terminated the proceedings against appellee in that court.  Moreover, given the circumstances, we think that the court did not abuse its discretion in proceeding under Rule 2–602.  Indeed, it is with some ill grace that, having agreed to proceed under Rule 1029 to present the venue question to us, appellee would subsequently move to dismiss the appeal on this procedural ground.

habitually engages in a vocation. In addition, a corporation also may be sued where it maintains its principal offices in the State.

(b) *Multiple defendants.*—If there is more than one defendant, and there is no single venue applicable to all defendants, under subsection (a), all may be sued in a county in which any one of them could be sued, or in the county where the cause of action arose."

Section 6-202, captioned "Additional venue permitted," provides that "In addition to the venue provided in §§ 6-201 or 6-203, the following actions may be brought in the indicated county: ... (8) Tort action based on negligence— Where the cause of action arose." Section 6-203, everyone agrees, has no relevance in this case.

Wilde's position, and that of the Circuit Court, is that, (1) a plaintiff may invoke § 6-201(b) and sue a defendant outside of his county of residence or employment only if "there is no single venue applicable to all defendants, under subsection (a)," (2) § 6-202(8) provides a single venue applicable to all defendants in this case, namely, Worcester County, where the cause of action for negligence arose, and (3) therefore Wilde cannot be sued in Montgomery County under § 6-201(b). The plaintiffs, on the other hand, see § 6-202 as providing *additional* venue, at the plaintiffs' option, and not controlling their ability to proceed under § 6-201(b). We agree with the plaintiffs and shall therefore reverse the judgment of the Circuit Court.

Sections 6-201 and 6-202 did not emerge live from the head of Zeus. They have a long legislative history which must be considered in arriving at a proper determination of their meaning.

The derivation and early history of the Maryland venue law was described by the Court of Appeals in *Eck v. State Tax Comm. of Md.*, 204 Md. 245, 103 A.2d 850 (1954). In its earliest statement, the Maryland statute made it unlawful

"for any person whatsoever to cause any inhabitant of this state to be arrested out of the county where he or

she doth reside, by virtue of any *capias ad respondendum*, or *capias ad satisfaciendum*, for any debt, damage or cost, until the sheriff or coroner of the county where such defendant shall reside shall have returned a *non est inventus* ... issued at the request of the said person against the defendant."

1801 Md. Laws, ch. 74, § 11.[3] If a person was indeed arrested upon a *capias ad respondendum* "contrary to the intent of this act, the plaintiff in the said action shall suffer a nonsuit, and pay the defendant his or her reasonable costs and charges...." *Id.*, § 12. There was but one proviso— that "nothing in this act contained shall extend to the benefit or advantage of any person who shall abscond from justice in the county where they live, but that such persons may be arrested in any county wherever they may be found." *Id.*

Although the statute was put in more modern form in the codification of 1860 (see Md.Code Ann. (1860), art. 75, § 87), its substance remained essentially intact until the addition of another "proviso" in 1888—that "any person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county, may be sued in either county...." 1888 Md.Laws, ch. 456. At that point, a defendant could be sued (1) in the county where he lived, (2) in the county where he regularly worked, or (3) in any county if he had absconded from his county of residence or if process directed to his county of residence was returned *non est.*

---

**3.** As indicated in *Eck* and in 2 Alexander's British Statutes, pp. 658–664, this statute had British and colonial antecedents. A *capias ad respondendum* was "[a] judicial writ ... by which actions at law were frequently commenced; and which commands the sheriff to *take* the defendant, and him safely keep, so that he may have his body before the court on a certain day, to *answer* the plaintiff in the action." Black's Law Dictionary, p. 262. A *capias ad satisfaciendum* was a writ of execution commanding the sheriff to take, hold, and produce the defendant before the court "*to satisfy* the damages or debt and damages in certain actions.... As a rule it lay in all cases where a *capias ad respondendum* lay." *Id.* See also 3 W. Blackstone, *Commentaries on the Laws of England,* 282–83 (1898).

The next relevant change came in 1945, when the General Assembly added to the statute (then Md. Code Ann. (1939), art. 75, § 157) this language:

"In any action ex delicto in which all of the defendants are not residents of, nor carrying on regular business in, nor habitually engaged in any avocation or employment in one county, the plaintiff may, at his election, sue all said defendants in the county where the cause of action arose."

The general venue statute codified in art. 75, though indeed general, was neither exclusive nor all-encompassing. Throughout the Code were other, special venue provisions applicable to particular kinds of cases, and they were not all consistent with the art. 75 provision. Art. 16, § 101, for example, applicable in equity cases, provided that "[w]here defendants reside in different counties ... the court where any one of the defendants resides shall have jurisdiction, and the bill or other proceedings may be filed or had in such court." A defendant in an equity case could, then, be sued outside the county of his residence or employment if venue there was permissible because of the residence of a co-defendant, notwithstanding that the general venue statute in art. 75 was otherwise applicable in equity cases. See *Hopper v. Brodie*, 130 Md. 443, 100 A. 644 (1917); *Allender v. Ghingher*, 170 Md. 156, 183 A. 610 (1936); *Zouck v. Zouck*, 204 Md. 285, 104 A.2d 573 (1954).

There was another, separate venue provision applicable to actions *ex contractu* against joint obligors. Initially, it provided that, if joint obligors resided in different counties, "they may be sued in the counties in which they respectively reside" (Md.Code Ann. (1951), art. 50, § 6), but in 1953, the Legislature amended and broadened that statute to provide that *"[i]n any action ex contractu in which all of the defendants are not residents of the same County, the plaintiff at his election may sue all said defendants in the County in which any one of the defendants resides or regularly does business."* (Emphasis added.) 1953 Md.

Laws, ch. 206. See *Hillyard Constr. Co. v. Lynch,* 256 Md. 375, 260 A.2d 316 (1970), applying the 1953 amendment.

As of 1953, then, subject to the other special provisions, in a multi-defendant case (1) if the action was in equity, the plaintiff could sue all defendants where any one of them *resided,* (2) if the action was *ex contractu,* he could sue all where any of them *resided or regularly did business,* (3) if the action was *ex delicto,* and not all of the defendants resided, carried on regular business, or were habitually engaged in avocation or employment in any one single county, he could sue all where the cause of action arose, but (4) otherwise, he had to sue each in the county where he resided, carried on regular business, or engaged in avocation or employment.

Through a series of enactments in 1954, 1961, and 1966, the Legislature attempted to ameliorate some of these differences by expanding the range of options available to plaintiffs in tort actions to match, more or less, those available to plaintiffs in contract and equity actions.

The 1954 act (1954 Md.Laws, ch. 60) amended the general venue law (Md.Code Ann. (1951), art. 75, § 158) to allow an *ex delicto* action against multiple defendants to be brought where any of the defendants reside. The manner in which the Legislature made that change is significant. It added onto the 1945 language—then the second paragraph of § 158—as follows (underscoring indicating the new language):

"In any action ex delicto in which all the defendants are not residents of, not carrying on regular business in, or habitually engaged in any avocation or employment in one county, the plaintiff may, at his election, sue all said defendants in the county where the cause of action arose *or sue all of the said defendants in the county where any one of the defendants reside.*"

The significance of the new language, in light of its placement, is that it clearly gave the plaintiff a choice of fora in a multi-defendant *ex delicto* case. He could, at his

election, sue all defendants *either* where the action arose *or* where any of them resided.

The 1961 amendment arose, we assume, from some concern that an action based on negligence might not be regarded as one *ex delicto.* It added to the general venue statute (then Md.Code Ann. (1957), art. 75, § 75) a new provision: "In any action ex delicto based upon negligence, the plaintiff at his election may sue the defendant or defendants in the county where the cause of action arose." See 1961 Md.Laws, ch. 603.

Finally, in 1966, the Legislature decided to subject an *ex delicto* defendant to suit in the county where he or any co-defendant regularly worked. By 1966 Md.Laws, ch. 402, it amended the *ex delicto* provision, then codified as § 75(b), to provide:

"In any action ex delicto in which all the defendants are not residents of, nor carrying on regular business in, or habitually engaged in any vocation or employment in one county, the plaintiff may, at his election, sue all said defendants in the county where the cause of action arose or sue all of the said defendants in the county where any one of the defendants resides, carries on a regular business or is habitually engaged in any vocation or employment."

The 1961 addition pertaining to negligence actions was split off as subsection (c).

The current law—§§ 6–201 and 6–202—was enacted through the code revision process in 1973 as part of the Cts. & Jud.Proc. article.

The rule of construction generally applicable in reviewing recodified laws was well put in *Welsh v. Kuntz,* 196 Md. 86, 96–97, 75 A.2d 343 (1950):

"There is no question that a codification of previously enacted legislation, eliminating repealed laws and systematically arranging the laws by subject matter, becomes an official Code when adopted by the Legislature, and it becomes the latest expression of the legislative will and,

if the Legislature so provides, controls over all prior expressions on the subject.... But inasmuch as the principal function of a Code is to reorganize the statutes and state them in simpler form, changes are presumed to be for the purpose of clarity rather than for a change in meaning. Even a change in the phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code."

See also *Bureau of Mines v. George's Creek*, 272 Md. 143, 321 A.2d 748 (1974); *Collier v. Connolley*, 285 Md. 123, 400 A.2d 1107 (1979).

The legislative history of the Cts. & Jud.Proc. article shows no unmistakable intention to change the preexisting law; indeed it shows quite the opposite. In a memorandum to the General Assembly, the draftsmen of the article—the Governor's Commission To Revise The Annotated Code—explained that "[t]he basic thrust of the commission's work has to do with formal and not substantive changes," and that, to the extent substantive recommendations were made to eliminate obsolete provisions or rectify gaps or inconsistencies in the law, they were pointed out in revisor's notes. See Commission Report 3F, July 16, 1973, p. 3. In the section describing the venue provisions, the Report states, in relevant part:

"Subtitle 2 contains the revised material dealing with venue. The draft attempts to minimize the distinction between local and transitory causes of action to the fullest extent possible. Venue is treated pragmatically with § 6–201 stating the general rule that a defendant should, when possible, be tried in a county which is convenient for him—*i.e.*, where he lives or works. *If present law allows an alternative venue as it does in certain cases, the additional venue is set out in § 6–202. It should be noted that a plaintiff may choose*

*a venue from either section, and that § 6–201 is not controlling if an alternative venue is provided."*
(Emphasis added.) *Id.,* p. 47.

The revisor's note to § 6–201 is consistent with that notion of *optional* venue. It states, in relevant part:

"This title is organized pragmatically, with § 6–201 covering all actions, whether local or transitory which fit the general rule, and providing exceptions to that rule in those cases where the local action venue requirements retain some viability.

Sec. 6–202 contains *additional* venues *permitted* in certain instances....

.    .    .    .    .

Subsection (b) contains the multiple defendant provisions *presently appearing in Art. 75, § 75(b) with respect to tort actions, Art. 50, § 5 with respect to contract actions and Art. 16, §§ 100 and 101 with respect to suits in equity."*
(Emphasis added.)

As noted above, the provisions referred to—art. 75, § 75(b), art. 50, § 5, and art. 16, § 100—clearly allowed an action against multiple defendants to be brought in the county where any one of them resided or regularly worked. The Commission's Report and the Revisor's Note show just as clearly that there was no intention to change that situation. See also W. Adkins, *Code Revision In Maryland: The Courts And Judicial Proceedings Article,* 34 Md.L. Rev. 7, 36 (1974). Nor does the wording of the current provisions, notwithstanding use of the word "if" in § 6–201(b), "unmistakably" evidence any such intention. Section 6–202 is captioned "Additional Venue Permitted"; its introductory language is that *"[i]n addition to the venue provided in §§ 6–201 or 6–203, the following actions may be brought* in the indicated county...." (Emphasis added.)

In our view, the language of the statute, read in the light of its legislative history, provides no basis for the conclu-

sion reached by the Circuit Court; § 6–201(b) is *not* controlled by or subject to § 6–202. Where either is applicable, it is the plaintiff's choice. It follows, then, that, as two of the defendants here resided in Montgomery County, venue lay in that county for the action against all of the defendants, including Mr. Wilde.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE; MANDATE TO ISSUE FORTHWITH.