578 A.2d 844

**Thomas T. HANSFORD, Sr.**

v.

**DISTRICT OF COLUMBIA.**

**No. 1764, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Sept. 5, 1990.

302

Gary M. Sidell (Leslie G. Fein and Crowley, Hoge & Fein, P.C., on the brief), Washington, D.C., for appellant.

Lutz Alexander Prager (Herbert O. Reid, Sr. and Charles L. Reischel, on the brief), Washington, D.C., for appellee.

Argued before ALPERT, BLOOM, and CATHELL, JJ.

ALPERT, Judge.

In this case of first impression, we must decide whether Maryland courts may exercise jurisdiction over a non-resident who "causes tortious injury in the state by an act or omission ..." on a federal enclave located within the geographical boundaries of Maryland. Under the circumstances set forth below, we answer in the negative.

On August 15, 1988, appellants, Thomas T. Hansford, Sr. and his wife, Mary Dell Hansford, filed a complaint in the Circuit Court for Prince George's County against the District of Columbia (appellee), a District of Columbia employee, J.E. Neil Olliviera (Olliviera), and Carl Sewanti Richardson, Jr. (Richardson), due to their son's murder. In their complaint, appellants allege that, in 1987, appellee and its employee Olliviera, were negligent in the operation of their maximum security prison for juvenile delinquents and, as a result, Richardson was able to escape from their custody and control. The prison, known as Oak Hill, is located in Laurel, Maryland. Richardson escaped from the facility during the summer of 1987. On August 16, 1987, Richardson murdered Thomas T. Hansford, Jr., the oldest child of appellants. Appellants live in Prince George's County.

On October 17, 1988, appellee and Olliviera filed a motion for additional time to answer the complaint. The court granted this motion on October 21, 1988.

On March 13, 1989, the District filed both a motion "raising preliminary objections and to dismiss complaints," and an answer to the complaint. The clerk's office docketed both on March 13th, numbering the answer ahead of the motion. On June 15, 1989, appellants filed their opposition to appellee's motion.

On September 8, 1989, the trial court granted appellee's motion based on lack of personal jurisdiction and dismissed

the complaint against appellee. Appellants filed a timely appeal. On December 4, 1989, the trial court granted appellant's motion for entry of a final judgment.

Appellant asks this court to consider whether the trial court erroneously:

I.    granted appellee's motion to dismiss insofar as it found no Maryland statute authorized the exercise of jurisdiction over appellee as a "foreign municipal corporation" even though it maintains a full time presence in this state by operating a maximum security detention facility.

II.    considered and granted appellee's motion to dismiss due to lack of personal jurisdiction where appellee had, five (5) months prior to filing such motion, entered its general appearance in the case, and where appellee filed an answer, including ten (10) defenses, a set-off, a cross-claim, and a jury trial demand, before filing its motion raising preliminary objections.

III.    granted appellee's motion to dismiss insofar as it found sovereign immunity barred liability in Maryland courts based on appellee's negligent operation in Maryland of a maximum security prison for violent juvenile delinquents.

## I.  *Personal Jurisdiction*

■  Appellee contends that the lower court properly granted its motion to dismiss for lack of personal jurisdiction since the District of Columbia's alleged negligence in allowing Richardson to escape and in not assisting in his recapture occurred at Oak Hill, a federal enclave,[1] over which the District and the United States have been ceded exclusive jurisdiction. Appellant counters that, regardless of Oak Hill's status as a federal enclave, the lower court still has jurisdiction over appellee pursuant to the Maryland

---

1.  "[A]reas in which a state has ceded jurisdiction to the United States are known as 'Federal Enclaves' or 'Federal Islands' within the state." 16 Words and Phrases 486 (1959).

Code, Courts and Judicial Proceeding, § 6–101 and § 6–103. Appellee is correct. We explain.

The land on which Oak Hill is located was acquired by the United States in 1923, pursuant to a congressional directive, for use by the District of Columbia for municipal purposes. 42 Stat. 1327, 1360, ch. 148 (1923).[2] At the time of this acquisition, Chapter 743, § 2 of the Maryland Sessions Laws of 1906, later codified as Md.Ann.Code Art. 96, § 36 (1957), granted the United States exclusive jurisdiction of land acquired by it:

> *Exclusive jurisdiction* in and over any land so acquired by the United States shall be and the same is hereby ceded to the United States *for all purposes* except the service upon such sites of all civil and criminal process of the courts of this State, but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands.

(Emphasis added).

Later, Section 47, enacted in 1943, limited any cession of jurisdiction over "lands hereafter acquired by the United States" to concurrent jurisdiction at most. That section provides that the State retains jurisdiction over lands acquired by the United States to the fullest extent possible under the Constitution. Thus, we conclude that Maryland,

---

**2.** The law provided:
> The Commissioners of the District of Columbia are authorized and directed to acquire a site for a home and school for feeble-minded persons, said site to be located in the District of Columbia or in the State of Maryland or in the State of Virginia, and to erect thereon suitable buildings.... If the land proposed to be acquired is without the District of Columbia and can not be purchased at a satisfactory price, the Attorney General of the United States, at the request of the Commissioners of the District of Columbia, shall institute condemnation proceedings to acquire such land as may be selected for said site either in the State of Maryland or in State of Virginia in accordance with the laws of said States, the title of said land to be taken directly to and in the name of the United States, but the land so acquired shall be under the jurisdiction of the Commissioners of the District of Columbia as agents of the United States....

for land acquired by the United States between 1906 and 1943, has "ceded exclusive jurisdiction to the United States for all purposes except the service of process." 63 Ops.Md. Att'y Gen. 332, 333 (1978); 61 Ops.Md.Att'y Gen. 441, 446 (1976).

Historically, the jurisdiction of courts to render judgment *in personam* was grounded on their de facto power over the defendant's person. Hence, his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). In *International Shoe*, the Court held that due process requires only that, in order to subject a defendant to a judgment *in personam* if he is not present within the territory of the forum, he must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* The Court's reasoning in upholding the jurisdiction of the State of Washington over the International Shoe Company was that

it would be unfair to one who has a cause of action based on activities within a state to be compelled to go outside the state to make his claim. On the other hand, it would not be unfair to compel the foreign corporation to defend the case in the state in view of its contacts there.

Auerbach, *The "Long Arm" Comes to Maryland*, 26 Md.L. Rev. 13, 17 (1966).

After *International Shoe*, "states began to enact 'long arm' or 'single act' statutes asserting jurisdiction on the basis of acts within the state." *Id.* at 19. In 1964, Maryland enacted a "long arm" statute intended to extend the jurisdiction of the state courts to the fullest possible limit under the state and federal constitution. *See* 1964 Md. Laws 95. *See also* Legislative Council of Maryland, Report to the Gen. Assembly 1964, at 179–180.

In the case *sub judice,* however, we do not believe that personal jurisdiction can be secured through Maryland's "long arm" statute. Md.Cts. & Jud.Proc.Code Ann. §§ 6-103, 6-101 (1989). Section 6-103(b)(3) authorizes a court to exercise personal jurisdiction over a person who "causes tortious injury in the state by an act or omission *in the State.*" (Emphasis added). We note that § 6-101(d) defines "State" as including "any federal enclave, reservation, or land within the geographical limits of the State." We further note the legislative intent of this statute set forth in § 6-101(e):

It is the intention of the General Assembly to extend the personal jurisdiction and venue of courts of the State and the power to serve process of those courts to any person on federal enclaves, reservations, or lands within the State to the fullest extent permitted by the Constitution and laws of the United States.

The Court of Appeals in *Lowe v. Lowe,* 150 Md. 592, 598, 133 A. 729 (1926), while considering the right of a resident of Perry Point, a federal enclave, to sue for divorce in a state court, stated that "courts have, with practical unanimity, held that the power of exclusive legislation carries with it exclusive jurisdiction, and in many cases have treated the cession as accomplishing a thorough separation of the land and its inhabitants from the state." The Supreme Court, however, in *Evans v. Cornman,* 398 U.S. 419, 421–22, 90 S.Ct. 1752, 1754–55, 26 L.Ed.2d 370 (1970), clearly rejected "the fiction of a state within a state," and held that individuals living on the grounds of National Institutes of Health (N.I.H.), a federal enclave within the geographical boundaries of Maryland, could not be denied the right to vote in Maryland elections. *See also Howard v. Commissioners of Sinking Fund,* 344 U.S. 624, 627, 73 S.Ct. 465, 467, 97 L.Ed. 617 (1953).

In the instant case, were we to consider the issue of whether the alleged tortious act of appellee was committed "in the state" on the basis of the preceding authorities and the definition of "state" provided in § 6-101(d), we would be

inclined to accept appellant's contention that Maryland courts have personal jurisdiction in the present matter.

Section 6–101 must be read, however, together with Maryland statutes which limit jurisdiction. "It is [ ] an established principle that all statutory provisions which relate to the same subject matter and are thus *in pari materia* should be construed together and harmonized as far as possible." *Unnamed Physician v. Commission on Medical Discipline of Maryland,* 285 Md. 1, 10, 400 A.2d 396 (1979).

Although the State has statutorily reserved jurisdiction over lands that the United States has acquired since 1943, under Maryland State Government Code Annotated § 14–102(b) (1984), this reservation does not

affect the jurisdiction and authority of the State over land or *persons,* property, and *transactions* on land that the United States or its unit has acquired on or before May 31, 1943 to the extent that the State ceded jurisdiction under * * * Chapter 743, §§ 2 and 3, of the Acts of the General Assembly of 1906 * * *.

(Emphasis added).

The legislature in 1988 added subsection (c) to § 14–102, which provided that:

Notwithstanding subsection (a) of this section, for the purpose of enforcing the civil or criminal laws of the State, the governor may enter into agreements with the United States to establish full or partial concurrent jurisdiction by the State and the United States over any lands in the State held by the United States.

Md. State Gov't §§ 14–102(c) (Supp.1990).

The legislature chose not to amend subsection (b) (above).

We conclude, then, that whereas the legislature intended to "extend jurisdiction ... of courts of the state ... to any person on federal enclaves ... to the fullest extent permitted by the Constitution and laws of the United States," it is apparent that it did not intend the extension to apply to "transactions on land that the United States ... has ac-

quired on or before May 31, 1943...." "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 63, 507 A.2d 172 (1986).

We hold that the Circuit Court for Prince George's County lacked jurisdiction and that the trial court properly granted the Motion to Dismiss, albeit for different reasons than those discussed above.[3] *See Robeson v. State,* 285 Md. 498, 503, 403 A.2d 1221 (1979).

II. *Rule 2-322(a)—Waiver of Certain Defenses*

■ Appellant contends that appellee waived its claim of lack of personal jurisdiction by (1) filing its October 17, 1988 motion for an extension of time in which to answer or otherwise respond to the complaint and (2) failing to file its motion raising preliminary objections before filing its answer. We find no merit in these contentions.

Appellant cites authorities which hold that if a defense under Rule 323, the predecessor of the present Maryland Rule 2–322, is asserted as part of a pleading which goes to the merits, there has been a "general appearance" which constitutes a waiver of preliminary objections. *See Eastham v. Young,* 250 Md. 516, 522, 243 A.2d 559 (1968); *McCormick v. Church,* 219 Md. 422, 149 A.2d 768 (1959). Appellants argue that appellee's motion for an extension of time in which to answer or otherwise respond to the complaint dealt with the substance of the complaint on its

**3.** We are cognizant of the fact that appellee's entire jurisdiction argument on this point is dependent on the fact that the federal government acquired the land in question between 1906 and 1943. Appellee acknowledges that the deed to the subject "federal enclave," authenticating that the land acquisition occurred in 1923, is not part of the record before the circuit court. A copy of the deed was annexed to a motion to supplement the record, which motion was both filed and denied after oral argument. Since appellant does not dispute the existence of the deed, however, or, more important, the fact that the United States acquired the land in 1923 and still owns it, we have assumed, for the purpose of our analysis, that the United States acquired the land then and still owns it.

merits and thereby waives appellee's right to contest the court's jurisdiction. We reject this contention outright. A request for an extension of time in which to answer or respond does not in any manner go to the merits of the case.

In addition, appellant contends that appellee has waived its preliminary objection to jurisdiction since it failed to file its motion raising its objections "before" filing its answer.[4] Although both the motion to dismiss and the answer were filed by appellee and placed on the docket by the court clerk on the same day, appellant asserts that appellee has failed to comply with Rule 2–322 and thus has waived the jurisdictional defense.

In considering this issue at the motions hearing, the trial judge stated:

Both filed on the same day. It probably would have been better had you made sure that the motion raising preliminary objections was docketed in first, but I think that is a super technical matter and I'm not going to conclude that you have waived the right to raise the matters contained in the motion raising preliminary objection merely because the clerk in shuffling papers put one ahead of the other, although I have, if my memory serves me, seen instances in which some higher court concluded that was fatal, but to me that's....

We agree with the trial judge's conclusion. The purpose of Rule 2–322(a) is to have a legal question decided before the trial of the action on its merits and this purpose has been accomplished. *Irvine v. Montgomery County*, 239 Md. 113, 117, 210 A.2d 359 (1965). "Compliance with procedural regulations is essential to the fair and efficient administration of justice, but it is the substance of the compliance and fair treatment of the parties which are determinative." *Id.* (Citations omitted).

---

4. Maryland Rule 2–322 provides that the defense of lack of jurisdiction *"shall* be made by motion to dismiss filed *before* the answer...." (Emphasis added).

## III.

Given our decision on the first issue, we need not decide this one.

JUDGMENT AFFIRMED; APPELLEE TO PAY THE COSTS.