594 A.2d 574

**Stavroula ANDROUTSOS et al.**

v.

**FAIRFAX HOSPITAL.**

**No. 140, Sept. Term, 1990.**

Court of Appeals of Maryland.

Aug. 27, 1991.

Jerry R. Goldstein (Goldstein, Handler & White, P.C., both on brief), Bethesda, for appellant.

Joseph M. Mott (Miles & Stockbridge, Rockville, Gerald R. Walsh, Walsh & Cremins, Fairfax, Va., all on brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ.

KARWACKI, Judge.

In this case we shall hold that the Circuit Court for Montgomery County abused its discretion in dismissing a suit for lack of personal jurisdiction over a non-resident defendant without permitting the plaintiffs to develop facts in support of jurisdiction through appropriate discovery procedures. Accordingly, we shall vacate the judgment and remand the case so that such discovery may proceed.

On April 23, 1990, Stavroula Androutsos, an elderly woman, and her son, Pericles Androutsos, filed suit for damages against Fairfax Hospital, a Virginia corporation with its principal place of business in Fairfax, Virginia. Their complaint made the following allegations.

While residing with her son in Montgomery County, Mrs. Androutsos was admitted to Fairfax Hospital for revision of a right hip prosthesis. That surgery was successfully performed on April 27, 1987. Five days later, while Mrs. Androutsos was recuperating from that surgery, the defendant's nursing staff negligently permitted her to fall out of bed on two occasions, causing her to suffer a fracture of her left hip. That fracture required further surgery and Mrs. Androutsos was required to remain hospitalized until May 29, 1987. As a proximate result of the fracture of her left hip, Mrs. Androutsos has incurred and will continue to incur medical expenses, has endured and will continue to endure pain and suffering, and has sustained a permanent disability. As a result of the fracture of his mother's left

hip, Mr. Androutsos has incurred expenses for her care, including the cost of full-time nursing services.

The plaintiffs asserted that the defendant was subject to the personal jurisdiction of the court under the subsection of our long arm statute, Maryland Code (1974, 1989 Repl. Vol.), Courts and Judicial Proceedings Article, § 6–103(b)(4), which provides:

> (b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent: ...

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

Anticipating that the defendant would challenge the long arm jurisdiction over its person, the plaintiffs served the defendant with interrogatories and requests for production of documents relevant to that issue along with their complaint. On June 25, 1990 defendant moved to dismiss the complaint because, *inter alia*, the court was incapable of exercising personal jurisdiction over it. At the same time it moved for a protective order pursuant to Maryland Rule 2–403, precluding plaintiffs from obtaining any discovery from it until after a ruling on its motion to dismiss. On July 10, 1990, the court granted defendant's motion for protective order one day before plaintiffs filed a timely opposition to that motion on July 11, 1990. *See* Md. Rule 2–311(b). On July 20, 1990, plaintiffs moved for reconsideration of the court's protective order.

At a hearing on September 5, 1990, the court declined to reconsider the protective order issued on July 10, 1990, and granted defendant's motion to dismiss on the ground that the court lacked personal jurisdiction over the defendant. The plaintiffs appealed to the Court of Special Appeals. We issued a writ of certiorari on our own motion prior to consideration of the case by the intermediate appellate court.

## I.

In *Camelback Ski Corp. v. Behning*, 307 Md. 270, 513 A.2d 874 (1986), *vacated and remanded*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *on remand*, 312 Md. 330, 539 A.2d 1107, *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988), we applied § 6–103(b)(4) of the Courts and Judicial Proceedings Article to the facts there presented and determined that a Maryland trial court had not obtained personal jurisdiction over a non-resident defendant. We noted that this Court has consistently held that "the intent of the legislature in enacting Maryland's long arm statute was to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution." 307 Md. at 274, 513 A.2d at 876. We then explained:

"The basic standard to be applied in determining whether this State may exercise personal jurisdiction over Camelback is whether that corporation has 'certain minimum contacts with [Maryland] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As the Supreme Court acknowledged in *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978), this standard is not susceptible of mechanical application, and the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present:

We recognize that this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' *Kulko, supra*, 436 U.S. at 92, S.Ct. at 1696 (citation omitted)."

307 Md. at 274–75, 513 A.2d at 876.

After reviewing each contact which Camelback Ski Corp. had with this State, we held that those contacts were insufficient to sustain the Maryland court's personal jurisdiction over that non-resident defendant. 307 Md. at 285–

86, 513 A.2d at 881–82. After the case was remanded to this Court for further consideration in light of *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), we reconsidered our decision, but reached the same conclusion. 312 Md. at 342–43, 539 A.2d at 1112–13. Our opinions in *Camelback Ski Corp.*, emphasize the importance of a full record of the contacts which the non-resident defendant has had with this State for a proper determination of whether a claim of personal jurisdiction over that non-resident can be sustained.

## II.

We have repeatedly stated that our discovery rules, which are broad and comprehensive in scope, have as their principal objective the required disclosure of all relevant facts surrounding the litigation before the court. *Kelch v. Mass Transit Admin.*, 287 Md. 223, 229, 411 A.2d 449, 453 (1980); *Klein v. Weiss*, 284 Md. 36, 55, 395 A.2d 126, 137 (1978); *Williams v. Moran*, 248 Md. 279, 291, 236 A.2d 274, 281 (1967); *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 13–14, 174 A.2d 768, 771 (1961). In *Baltimore Transit Co. v. Mezzanotti*, we reasoned:

"If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice. In order to accomplish the above purposes, the discovery rules are to be liberally construed. And the trial judges, who are primarily called upon to administer said rules, are vested with a reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse."

Nowhere is that rationale more applicable than when a fact-specific issue, such as whether the court can exercise personal jurisdiction over a non-resident defendant, is present-

ed. The federal courts in construing their discovery rules have consistently held that when a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion before any ruling is made on the motion. *See, e.g., Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253, 265 n. 13 (1978); *Crane v. Carr III,* 814 F.2d 758, 764 (D.C.Cir.1987); *Compagnie des Bauxite deGuinee v. L'Union,* 723 F.2d 357, 362 (3rd Cir.1983); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 729–31 (11th Cir.1982); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1343 (2nd Cir.1972); *Fraley v. Chesapeake & Ohio Railway,* 397 F.2d 1, 3 (3rd Cir.1968); *Surpitski v. Hughes–Keenan Corp.,* 362 F.2d 254, 255–56 (1st Cir.1966); *Collins v. New York Central System,* 327 F.2d 880, 882–83 (D.C.Cir.1963). Since our discovery rules are patterned after the federal rules, we look to those federal decisions for guidance in this area. *Bartell v. Bartell,* 278 Md. 12, 18, 357 A.2d 343, 346 (1976); *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308–309, 221 A.2d 342, 352 (1966).

In the instant case, the court's conclusion that it lacked personal jurisdiction was based upon a meager record. It had before it a conclusory affidavit from a vice president of the defendant and some authenticated copies of advertisements placed in the *Washington Post* by the defendant soliciting patronage for its hospital from residents of the Washington, D.C. metropolitan area, which includes Montgomery County. Those advertisements provided some indicia that defendant was subject to the personal jurisdiction of a Maryland court. Plaintiffs sought discovery through interrogatories and requests for production of documents of information relevant to defendant's expenditure for advertising aimed at Maryland residents, defendant's gross revenues from Maryland sources, the Maryland vendors with whom defendant does business, defendant's patients from Maryland and their gross billings, and Maryland health maintenance organizations and insurance carriers with

whom defendant does business. This discovery was specifically aimed at the contacts which defendant had with this State. Determination of quality and quantity of those contacts was essential to the court's proper conclusion as to whether defendant was subject to the long arm jurisdiction of the court. By preventing plaintiffs from discovering those crucial facts, the court abused its discretion.

JUDGMENT VACATED, CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY THE APPELLEE.