617 A.2d 1057

**Thomas T. HANSFORD, Sr. et al.**

v.

**DISTRICT OF COLUMBIA.**

**No. 150, Sept. Term, 1990.**

Court of Appeals of Maryland.

Jan. 14, 1993.

Gary M. Sidell (Leslie G. Fein, Crowley, Hoge & Fein, P.C., all on brief), for petitioners.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel (John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, all on brief), for respondents.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, JJ. and J. WILLIAM HINKEL, Administrative Judge of the Third Judicial Circuit of Maryland (Specially Assigned).

ELDRIDGE, Judge.

The principal issues in this case concern the authority of a Maryland court to exercise jurisdiction in a tort suit against the District of Columbia, where the District's allegedly

tortious conduct occurred on a federal enclave within the State of Maryland, over which enclave the State had ceded "exclusive jurisdiction" to the United States.

In June 1987 Carl Sewanti Richardson escaped from the juvenile detention facility known as Oak Hill Youth Center, located near Laurel, in Anne Arundel County, Maryland. The facility is operated by the District of Columbia. During the time after his escape and before his recapture, Richardson killed Thomas T. Hansford, Jr., in Prince George's County, Maryland. Richardson was convicted in the Circuit Court for Prince George's County, on August 3, 1988, of felony murder.

On August 15, 1988, the decedent's parents, Thomas T. Hansford, Sr., individually and as personal representative of the decedent's estate, and Mary Dell Hansford, instituted the present suit in the Circuit Court for Prince George's County against the District of Columbia, Mr. J.E. Neil Ollivierra, then Acting Superintendent of Oak Hill Youth Center, and Carl Sewanti Richardson. In their complaint, the plaintiffs alleged that the District of Columbia through its employees failed to "properly supervise and maintain custody and control" over Richardson and thereby negligently allowed him to escape from the Oak Hill Youth Center. It was also alleged that the District, by its employees at Oak Hill, was negligent in failing to "recapture [Richardson] in a timely manner." The District was alleged to be responsible, under the doctrine of respondeat superior, for the negligent acts of its employees.

Furthermore, the plaintiffs alleged that, at the time of Richardson's escape, the District of Columbia had a policy or custom of permitting escapees from the Oak Hill Youth Center to remain at large. The complaint stated that one of every three detainees was permitted to be missing from the facility. The plaintiffs argued that the District's negligent policy or custom of allowing Richardson to remain at large violated the decedent's civil rights by depriving him of his life without due process of law. The plaintiffs, therefore, claimed damages under 42 U.S.C. § 1983.

Finally, the complaint included an "assault and battery" count which applied only to the action against Richardson.

The plaintiffs, in asserting that the Circuit Court for Prince George's County could exercise jurisdiction in the case, relied on, *inter alia,* Maryland Code (1974, 1989 Repl.Vol.), §§ 3–902, 3–904, 6–101 and 6–103 of the Courts and Judicial Proceedings Article.[1] They also stated that they had complied with the provision of District of Columbia law which requires that notice of intent to sue the District be filed within six months of the incident alleged. D.C.Code § 12–309 (1981).

The District filed, on the same day, both a motion to dismiss and an answer to the complaint. The motion to dismiss asserted, with regard to the District, a lack of jurisdiction over the person. The motion also claimed that Mr. Ollivierra was immune from suit and that the complaint failed to state a cause of action against either the District or Mr. Ollivierra.

Although the plaintiffs in their opposition to the motion to dismiss did not raise the issue, the circuit court, at the hearing on the motion to dismiss, sua sponte raised a question about the timeliness of the motion. Maryland Rule 2–322 provides in pertinent part as follows:

"**PRELIMINARY MOTIONS**

"**(a) Mandatory.**—The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, and

---

1. Sections 3–902 and 3–904 are parts of the Wrongful Death Act. Section 6–101 provides that, "[f]or purposes of personal jurisdiction, venue, and service of process," any federal enclave or reservation is part of the State and county in which it is located and that the "personal jurisdiction and venue of" Maryland courts, "and the power to serve process of those courts," extends to persons on federal enclaves or reservations "to the fullest extent permitted by the Constitution and laws of the United States." Section 6–103 is part of the Long Arm Statute.

(4) insufficiency of service of process. If not so made and the answer is filed, these defenses are waived.

"**(b) Permissive.**—The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2–211, and (4) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed."

Counsel for the District of Columbia and for Mr. Ollivierra told the court that he had filed the motion to dismiss prior to filing the answer. The docket entries, however, read as if the answer were filed first. The circuit court found that counsel had in fact filed the motion to dismiss before filing the answer.

The circuit court then heard arguments on the motion to dismiss. The attorney in the Office of the Corporation Counsel of the District of Columbia, who represented both the District and Mr. Ollivierra, contended that, under Maryland law, the circuit court lacked jurisdiction over the District of Columbia, a foreign municipal corporation. Counsel, relying on *Phillips v. Baltimore*, 110 Md. 431, 72 A. 902 (1909), argued that a municipal corporation can be sued only in the courts of the jurisdiction where it is situated. It was also claimed that Mr. Ollivierra was immune from suit because he was a public official engaged in discretionary duties.

The District and Mr. Ollivierra further argued that the complaint failed to state a cause of action because there was no special relationship between the plaintiffs and these two defendants giving rise to a special duty. They also maintained that there was no causal connection between the alleged negligence of these defendants and the death of Thomas T. Hansford, Jr., and that there was no basis in law for the § 1983 claim.

On September 8, 1989, the circuit court dismissed the action against the District of Columbia, holding that a municipal corporation could not be sued, in transitory actions, outside the jurisdiction in which it is located. The circuit court's holding was based entirely on *Phillips v. Baltimore City, supra,* 110 Md. 431, 72 A. 902, which involved venue principles and the construction of a venue statute.

The circuit court refused to dismiss any part of the action against Mr. Ollivierra. The court stated that more factual development was required before it could render a decision on Mr. Ollivierra's defense of governmental immunity. The court also held that more factual development was needed before it could rule on the arguments that Mr. Ollivierra and the District owed no duty to the plaintiffs, that there was no causal connection between the death and alleged negligence of these defendants, and that there was no basis in law for the § 1983 claim.

The plaintiffs noted an appeal to the Court of Special Appeals on October 6, 1989. On December 4, 1989 the circuit court certified as final the judgment in favor of the District of Columbia. Rule 2–602(b).[2]

In its brief in the Court of Special Appeals, the District argued that it had complied with the filing requirements of Rule 2–322(a), and that the circuit court correctly held that, because the District was a municipal corporation, it could

---

2. Although the plaintiffs filed their notice of appeal before the judgment was certified as final, Maryland Rule 8–602(e)(1)(D) provides:
 "If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, ... if a final judgment was entered by the lower court after notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment."
 We will exercise this discretion and treat the plaintiffs' notice of appeal as if it had been filed on the same day as, but after, the certification as final of the judgment in favor of the District of Columbia.

not be sued outside its boundaries. Although not raised in the circuit court, the District contended in the Court of Special Appeals that there was another rationale for affirming the dismissal of the complaint against the District. The District argued that Maryland's cession of exclusive jurisdiction over the land upon which Oak Hill Youth Center rests deprived the circuit court of its ability to exercise jurisdiction over acts and omissions occurring on that land. The District maintained that, although in 1943 Maryland expressly reserved jurisdiction over lands leased or ceded to the United States, this reservation expressly did not

> " 'affect the jurisdiction and authority of the State over land or persons, property, and transactions on land that the United States or its unit has acquired on or before May 31, 1943 to the extent that the State ceded jurisdiction under ... Chapter 743, §§ 2 and 3, of the Acts of the General Assembly of 1906.' "

(District's brief at 14, quoting, Code (1984, 1992 Cum.Supp.), § 14–102(b) of the State Government Article.)

The Court of Special Appeals affirmed the judgment, although for a different reason than that relied upon by the circuit court. *Hansford v. District of Columbia,* 84 Md. App. 301, 578 A.2d 844 (1990). The intermediate appellate court held that a Maryland court could not exercise jurisdiction over the District of Columbia in this case because the District's alleged negligence occurred on a federal enclave which was ceded prior to 1943.

The plaintiffs filed in this Court a petition for a writ of certiorari raising the following three issues (although in a somewhat different order): (1) whether the trial court erred in granting the District's "motion to dismiss due to lack of personal jurisdiction where" the District had allegedly filed the motion after filing its answer; (2) whether the trial court erred in holding that the District, as a municipal corporation, could not be sued outside of the jurisdiction in which it is located; (3) whether the Court of Special Appeals erroneously affirmed the trial court's dismissal of the complaint against the District on the ground that the trial court

could not exercise jurisdiction where the District's alleged tortious conduct occurred on a federal enclave ceded prior to 1943. The District did not file a cross-petition or a conditional cross-petition for a writ of certiorari. Thereafter this Court granted the plaintiffs' petition, 321 Md. 709, 584 A.2d 708 (1991).

## I.

■ The plaintiffs continue to insist in this Court that, because the docket entries state that the District's answer was filed before its motion to dismiss was filed, the District has waived its right to argue issues which must be raised in a preliminary motion. As previously stated, Rule 2–322(a) requires that the defenses of lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process, be made in a motion to dismiss before an answer is filed. If not so made, the right to assert these defenses is waived.

The District's counsel represented to the trial judge that the motion to dismiss was filed prior to the answer. The trial judge indicated that the order of entries on the docket does not necessarily reflect the order in which the documents were filed. The trial judge stated: "I'm not going to conclude that you have waived the right to raise the matters contained in the motion raising preliminary objection merely because the clerk in shuffling papers put one ahead of the other."

Assuming arguendo that the contemporaneous filing of the motion and the answer would not satisfy the requirement of Rule 2–322(a), the trial court's finding that the motion was filed first is not clearly erroneous. Moreover, we note that the trial court's conclusion is supported by the date and time stamps on the pleadings. The plaintiffs' argument that the District waived its right to assert the defense of lack of jurisdiction over the person is without merit.

## II.

█ The District's sole "lack of jurisdiction" argument in the circuit court was that, as a matter of Maryland law, the District of Columbia may not be sued in a Maryland court for transitory actions because the District is a municipal corporation which may not be sued outside of the District of Columbia. The District's argument is based upon one case, involving venue principles and the construction of a Maryland venue statute, which supports the proposition that a Maryland municipal corporation can be sued only in the county where it is situated. *Phillips v. Baltimore City, supra,* 110 Md. 431, 72 A. 902.

Prior to *Phillips v. Baltimore City,* this Court in *Baltimore City v. Turnpike Co.,* 104 Md. 351, 65 A. 35 (1906), held that an action against Baltimore City, based on the City's alleged trespass upon the plaintiff's land located in Baltimore County, was properly brought in the Circuit Court for Baltimore County. Rejecting the City's assertion that the suit should have been brought in Baltimore City, the Court relied upon the principle that local actions should be brought in the jurisdiction where the land lies. *See Gunther v. Dranbauer,* 86 Md. 1, 6, 38 A. 33 (1897). In the *Turnpike Co.* case, the City's entire reliance in this Court was upon the rule, set forth in several out-of-state cases, that "a municipal corporation [can] be sued in its own Courts only, even in the case of a local action." 104 Md. at 351, 65 A. 35. This Court rejected the rule, stating (104 Md. at 357, 65 A. at 36):

"We have been referred to no decision in this State, that holds that a municipal corporation should not be bound by the rules of law, which are applicable to other litigants and no sound reason can be given why they should be excepted. The contention of the appellant, if carried to its logical conclusion, would result in depriving municipalities in the State, which have no Courts, from suing or being sued...."

Nevertheless, a few years later in *Phillips v. Baltimore City*, the Court did apply, in a transitory action against Baltimore City, the venue rule that a municipal corporation could be sued only in its own courts. 110 Md. at 436, 72 A. at 904. The Court held that this general rule was applicable to transitory actions in the absence of a statute modifying the rule. The *Phillips* Court limited the holding in *Baltimore City v. Turnpike Co.* to local actions only.

The *Phillips* Court then considered whether the venue statute relating to bringing suit against a corporation, which was then in effect, had changed this general rule. The Court held that the venue statute, which declared *inter alia* that a "corporation of this State" could be sued in any county where it regularly transacted business,[3] did not apply to a municipal corporation. 110 Md. at 437, 72 A. at 905.

*Phillips* has no application to the present case. The rule that was applied in *Phillips* is that a Maryland municipality, sued in a Maryland court in a transitory action, should be sued where it is situated. The District of Columbia is not a Maryland municipal corporation and is not situated in a Maryland county. In the context of this case, it is a nonresident corporate defendant.[4] Adoption of the District's argument would lead to the adoption of a venue rule which would grant foreign municipal corporations the unique privilege of being immunized from suit in the State of Maryland.

■ The Supreme Court of Kansas addressed this issue in *Hillhouse v. City of Kansas City*, 221 Kan. 369, 373, 559

---

**3.** Ch. 240 of the Acts of 1908, later codified as Code (1957), Art. 23, § 62.

**4.** As the Court pointed out in *Eck v. State Tax Comm. of Md.*, 204 Md. 245, 250, 103 A.2d 850, 853 (1954), when there is a nonresident defendant, Maryland venue restrictions are generally inapplicable and a transitory action can be brought wherever the nonresident defendant can be reached with process. *See also Alcarese v. Stinger*, 197 Md. 236, 244, 78 A.2d 651, 655 (1951).

P.2d 1148, 1151 (1977), stating: "there is no sound reason why a foreign municipal corporation should be treated any differently from foreign private corporations." We agree with the Supreme Court of Kansas and hold that a foreign municipal corporation is subject to the same venue rules as any private corporation.

*Phillips* has no application to this case for another reason. In *Phillips*, this Court construed a venue statute which stated that a "corporation of this State may be sued in any county ... where it regularly transacts business." This venue statute no longer exists. The comparable general venue statute now reads in pertinent part as follows (Code (1974, 1989 Repl.Vol.), § 6–201 of the Courts and Judicial Proceedings Article):

> "[A] civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation."

Thus, with respect to suits where regular business is carried on, the broader term "defendant" is used to encompass persons and corporations. The District of Columbia is certainly a "defendant." The *Phillips* Court's analysis of whether the former venue statute concerning "corporations" included Maryland municipal corporations has little relevance to an action brought against the "defendants" under the present venue statute.

Even if the venue statute had not been changed, this Court in *Eck v. State Tax Comm. of Md.*, 204 Md. 245, 252, 103 A.2d 850, 854 (1954), pointed out that "the [venue] rule applied in the *Phillips* case ... is not universal and has been subject to criticism...." The court in *Eck* declined to apply the *Phillips* holding with respect to suits against public officials relating to the performance of their official duties. 204 Md. at 253–254, 103 A.2d at 854–855.

The majority of jurisdictions which have reassessed the issue reject the notion that a municipal corporation is not subject to the same venue rules as other corporations. *See, e.g., Cacho v. Superior Court*, 170 Ariz. 30, 32, 821 P.2d

721, 723 (1991); *Lawless v. Village of Park Forest South*, 108 Ill.App.3d 191, 195–196, 438 N.E.2d 1299, 1302 (1982); *Guy v. Pennsylvania R. Co.*, 87 N.E.2d 712, 714 (Ohio Ct. of App., Cuyahoga Cty., 1949); *City of Cushing v. Coryell*, 400 P.2d 174, 175–176 (Okl.1965). *But see, Ex parte City of Birmingham*, 507 So.2d 471, 473–474 (Ala.1987). Moreover, as previously discussed, this Court prior to *Phillips* had rejected the special venue rule for municipal corporations and had stated, in the context of venue principles, that a municipal corporation should be treated like any other litigant. *Baltimore City v. Turnpike Co.*, *supra*, 104 Md. at 357, 65 A. at 36. In addition, there have been Maryland cases since *Phillips* where, without discussion, a municipal corporation has been subjected to suit outside of its county's boundaries. *See, e.g., Alexander v. Montgomery County*, 87 Md.App. 275, 589 A.2d 563 (1991) (Montgomery County sued in the Circuit Court for Prince George's County).

We agree with the majority of jurisdictions which today reject the notion that a municipal corporation is exempt from the venue principles governing other corporations. Consequently, for several reasons, the District's reliance upon *Phillips v. Baltimore* is misplaced.

### III.

The Court of Special Appeals held that the circuit court did not have jurisdiction over the District of Columbia because the allegedly tortious activities, giving rise to the suit against the District, occurred on a federal enclave which was acquired by the United States between the years 1906 and 1943. The land upon which Oak Hill Youth Center is situated was acquired in 1923 for governmental use by the District of Columbia. Act of February 29, 1923, ch. 148, 42 Stat. 1327, 1360.[5]

---

5. The land was acquired pursuant to a congressional directive, for use by the District of Columbia for municipal purposes. The directive provided (Act of February 29, 1923, ch. 148, 42 Stat. 1360):

At the time of the acquisition of the land upon which Oak Hill Youth Center rests, Chapter 743, § 2, of the Acts of 1906, later codified as Maryland Code (1957), Art. 96, § 36, provided:

"Exclusive jurisdiction in and over land so acquired by the United States shall be and the same hereby is ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State, but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands."

In 1943, the General Assembly limited any cession of jurisdiction over lands held by the United States to concurrent jurisdiction. Code (1984), § 14–102 of the State Government Article.

The Court of Special Appeals in its opinion stated that Maryland, between 1906 and 1943, " 'ceded exclusive jurisdiction to the United States for all purposes except service of process.' " *Hansford v. District of Columbia, supra,* 84 Md.App. at 306, 578 A.2d at 846, quoting 63 Att'y Gen. Ops. 332, 333 (1978); 61 Att'y Gen. Ops. 441, 446 (1976). The Court of Special Appeals appeared to view § 6–101 of the Courts and Judicial Proceedings Article and § 14–102 of the State Government Article as somewhat in conflict, and it

---

"The Commissioners of the District of Columbia are authorized and directed to acquire a site for a home and school for feeble-minded persons, said site to be located in the District of Columbia or in the State of Maryland or in the State of Virginia, and to erect thereon suitable buildings.... If the land proposed to be acquired is without the District of Columbia and can not be purchased at a satisfactory price the Attorney General of the United States, at the request of the Commissioners of the District of Columbia, shall institute condemnation proceedings to acquire such land as may be selected for said site either in the State of Maryland or in the State of Virginia in accordance with the laws of said States, the title of said land to be taken directly to and in the name of the United States, but the land so acquired shall be under the jurisdiction of the Commissioners of the District of Columbia as agents of the United States ..."

attempted to reconcile the two statutes. Section 6–101 of the Courts and Judicial Proceedings Article provides:

"**Definitions; jurisdiction as to federal land.**

"(a) For the purposes of personal jurisdiction, venue, and service of process, the following terms have the meanings indicated:

"(b) "County" includes any federal enclave, reservation, or land within the geographical limits of the county.

"(c) "Resident" includes a person residing on a federal enclave, reservation, or land in the State or a county.

"(d) "State" includes any federal enclave, reservation, or land within the geographical limits of the State.

"(e) *Legislative intent.*—It is the intention of the General Assembly to extend the personal jurisdiction and venue of courts of the State and the power to serve process of those courts to any person on federal enclaves, reservations, or lands within the State to the fullest extent permitted by the Constitution and laws of the United States."

Section 14–102 of the State Government Article provides:

"(a) *In general.*—With respect to land that the United States or any of its units leases or otherwise holds in the State, the State reserves jurisdiction and authority over the land and over persons, property, and transactions on the land to the fullest extent that is permitted by the United States Constitution and that is not inconsistent with the governmental purpose for which the land is held.

"(b) *Previous grants.*—This section does not affect the jurisdiction and authority of the State over land or persons, property, and transactions on land that the United States or its unit has acquired on or before May 31, 1943 to the extent that the State ceded jurisdiction under:

* * * * * *

"(4) Chapter 743, §§ 2 and 3, of the Acts of the General Assembly of 1906...."

The Court of Special Appeals concluded that, while "the legislature intended to 'extend jurisdiction ... of courts of

the state ... to any *person* on federal enclaves ... to the fullest extent permitted by the Constitution and laws of the United States,' it is apparent that it did not intend the extension to apply to '*transactions* on land that the United States ... has acquired on or before May 31, 1943.' " *Hansford v. District of Columbia, supra,* 84 Md.App. at 308–309, 578 A.2d at 848 (emphasis added). Therefore, according to the intermediate appellate court, because Maryland had ceded exclusive jurisdiction to the United States, the District of Columbia could not be subject to suit in a Maryland court based upon its activities at Oak Hill Youth Center.[6]

In our view, there is no conflict between § 6–101 of the Courts and Judicial Proceedings Article and § 14–102 of the State Government Article, and, therefore, there is no need to "reconcile" the statutes or adopt a strained construction of either. Furthermore, in dealing with the two statutes and the issues in this case, it is important to differentiate among the separate concepts of (1) a court's jurisdiction over the person, (2) a court's authority in civil cases to resolve disputes growing out of transactions occurring outside of the territorial jurisdiction in which the court is located, and (3) a state government's legislative, executive and administrative authority within its territorial limits.

 Section 6–101 of the Courts and Judicial Proceedings Article deals entirely with personal jurisdiction, service of process, and venue. A Maryland court is clearly entitled to serve process on and exercise jurisdiction over the person of the District of Columbia under the circumstances of this case. Because a federal enclave is included in the definition of "State," § 6–101(d), and because of the activities conduct-

---

**6.** There is nothing in the Court of Special Appeals' opinion which indicates that the result would have been different if a private, rather than a public, corporation had been sued based upon its activities on a federal enclave.

ed by the District of Columbia at the Oak Hill Youth Center in this State, the circuit court had the power to exercise jurisdiction over the "person" of the District of Columbia.[7]

■ We now turn to the holding of the Court of Special Appeals, namely that the cession of "exclusive" jurisdiction by the State of Maryland limits the authority of the courts of this State so that a Maryland court cannot exercise jurisdiction over " 'transactions on land that the United States ... has acquired on or before May 31, 1943 ...' " *Hansford v. District of Columbia, supra,* 84 Md.App. at 308–309, 578 A.2d at 848, quoting § 14–102(b) of the State Government Article.

---

7. Section 6–102 of the Courts and Judicial Proceedings Article provides:

"(a) *Basis of personal jurisdiction.*—A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State.

(b) *Exercise of jurisdiction on other basis.*—This section does not limit any other basis of personal jurisdiction of a court of the State."

The District of Columbia was served with process in the State of Maryland, and, in light of the District's activities within the State, this service conformed to the requirements of due process.

Alternatively, the District may be subject to suit in this State because of several of the acts enumerated in the Long Arm Statute, § 6–103 of the Courts and Judicial Proceedings Article. The District transacts business and performs work or service in the State, § 6–103(b)(1); the District allegedly caused tortious injury in the State by an act or omission in the State, § 6–103(b)(3); the District uses real property in the State, § 6–103(b)(5).

As this Court has repeatedly stated, the purpose of the Maryland Long Arm Statute is to permit a Maryland court to exercise jurisdiction over the person to the full extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Androutsos v. Fairfax Hospital,* 323 Md. 634, 637, 594 A.2d 574, 576 (1991); *Camelback Ski Corporation v. Behning,* 312 Md. 330, 342–343, 539 A.2d 1107, 1113, *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978); *Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551 (1977); *Geelhoed v. Jenson,* 277 Md. 220, 352 A.2d 818 (1976); *Krashes v. White,* 275 Md. 549, 341 A.2d 798 (1975); *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 260 A.2d 22 (1969). The District's activities on the federal enclave upon which Oak Hill Youth Center rests are sufficient to subject it to the jurisdiction of the Maryland courts.

Section 14–102(b) of the State Government Article deals entirely with the governing authority of the State of Maryland over enclaves ceded between 1906 and 1943. The section does not in any manner restrict the ability of courts to acquire in personam jurisdiction over persons and entities on federal enclaves. In fact, § 14–102(b) refers to Ch. 743 of the Acts of 1906 which excepted from the cession of jurisdiction "the service upon such sites of all civil and criminal process of the courts of this State." Consequently, there is no conflict between § 14–102(b) and § 6–101 of the Courts and Judicial Proceedings Article.

Section 14–102(b) also does not purport to restrict the traditional authority of Maryland courts to resolve disputes between plaintiffs and defendants over whom in personam jurisdiction has been acquired, regardless of where the transaction giving rise to such disputes occurred. Section 14–102(b) simply purports to restrict the applicability of Maryland law and Maryland executive and administrative governmental authority over federal enclaves ceded prior to 1943. The District's argument, and the position of the Court of Special Appeals, "confuses the political jurisdiction of a State with its judicial jurisdiction." *Gulf Offshore v. Mobil Oil Corp.*, 453 U.S. 473, 482, 101 S.Ct. 2870, 2877, 69 L.Ed.2d 784, 794 (1981).[8]

The courts have uniformly upheld a state court's exercise of jurisdiction over personal injury and wrongful death actions arising from activities occurring on federal enclaves under the "exclusive" jurisdiction of the federal government. The Supreme Court has stated that there is "[n]othing inherent in exclusive federal sovereignty over a territo-

---

**8.** While § 14–102(b) and Ch. 743 of the Acts of 1906 may literally purport to relinquish all Maryland political jurisdiction over federal enclaves ceded between 1906 and 1943, the effect of the cessions during that period is not quite as far reaching as the statutory language would indicate. For example, numerous Maryland laws concerning voting, education, other individual rights, taxation, licensing, appropriations, employment, divorce, etc., are applicable to such "exclusive" federal enclaves. *See* the discussion in *Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970).

ry [that] precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law." *Gulf Offshore v. Mobil Oil Corp., supra,* 453 U.S. at 481, 101 S.Ct. at 2877–2877, 69 L.Ed.2d at 793. The Supreme Court in *Gulf Offshore* continued (453 U.S. at 481–482, 101 S.Ct. at 2877, 69 L.Ed.2d at 793–794):

" 'The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe.' The Federalist No. 82, p. 514 (H. Lodge ed. 1908) (Hamilton), quoted in *Claflin v. Houseman,* 93 U.S. [130] at 138 [23 L.Ed. 833 (1876) ]. State courts routinely exercise subject-matter jurisdiction over civil cases arising from events in other States and governed by the other States' laws. See, *e.g., Dennick v. Railroad Co.,* 103 U.S. 11, 26 L.Ed. 439 (1881). Cf. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). That the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject matter-jurisdiction."

*See, e.g., Evans v. Cornman,* 398 U.S. 419, 424, 90 S.Ct. 1752, 1756, 26 L.Ed.2d 370, 375 (1970) (persons on exclusive federal enclaves "are subject to the process and jurisdiction of state courts"); *Ohio River Contract Co. v. Gordon,* 244 U.S. 68, 72, 37 S.Ct. 599, 601, 61 L.Ed. 997, 1000 (1917) (an action for personal injury suffered on a reservation under the exclusive jurisdiction of the United States may be maintained in a state court which has personal jurisdiction over the defendant); *Stokes v. Adair,* 265 F.2d 662, 666 (4th Cir.), *cert. denied,* 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959); *Mater v. Holley,* 200 F.2d 123 (5th Cir.1952); *Brennan v. Shipe,* 414 Pa. 258, 199 A.2d 467, *app. dismissed,* 379 U.S. 20, 85 S.Ct. 156, 13 L.Ed.2d 91 (1964); *In re Air Crash Disaster at Gander, Newfoundland,* 660 F.Supp.

1202, 1207–1208 (W.D.Ky.1987). *See also Swanson Painting Company v. Painters Local Union No. 260*, 391 F.2d 523, 525 (9th Cir., 1968) ("the fact that business is transacted within a federal enclave ... does not immunize the persons engaged therein from liability for breach of any duty arising from such activity"); *Knott Corporation v. Furman*, 163 F.2d 199, 202 (4th Cir.), *cert. denied*, 332 U.S. 809, 68 S.Ct. 111, 92 L.Ed. 387 (1947) ("the doing of business ... [on a federal enclave] amounts to ... consent to be sued in the federal court of the district as well as in the state courts with respect to a cause of action which has arisen there").

▪▪▪ Although a state court clearly can exercise jurisdiction in cases based on injuries occurring on a federal enclave within the state, the state court may be required under traditional choice of law principles to apply federal law in the tort suit. In this wrongful death case, the Congress has enacted legislation mandating the law to be applied, as 16 U.S.C. § 457 provides:

> **"Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws**
>
> "In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be...."

The recent cases hold that § 457 requires the application of state law as it exists at the time of the tort rather than state law at the time of the cession of the land. *See, e.g., Ferebee v. Chevron Chemical Company*, 736 F.2d 1529, 1533–1534 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984) (§ 457 envisions application of current law of surrounding state); *Vasina v. Grumman Corp.*, 644 F.2d 112, 117–118 (2d Cir.1981) (same); *Greene v. Vantage Steamship Corporation*, 466 F.2d 159, 166 n. 9

(4th Cir.1972) (implicitly interpreting § 457 to apply current state law); *Mathis v. General Electric Corporation*, 580 F.2d 192, 194 (5th Cir.1978) (same).

██ The District relies upon *Lowe v. Lowe*, 150 Md. 592, 133 A. 729 (1926), for the argument that the cession of exclusive jurisdiction over land transfers to the federal government exclusive authority and jurisdiction for all purposes, and deprives a state court of authority to entertain litigation growing out of a transaction on the federal enclave. *Lowe* involved an action for divorce filed by residents of a federal enclave in Cecil County, Maryland. This Court held that the Lowes, as residents of an "exclusive" federal enclave, were not residents of the State of Maryland and that, therefore, a Maryland state court had no authority to entertain their divorce action. *Lowe v. Lowe, supra,* 150 Md. at 600–601, 133 A. at 733. In support of its holding, the Court pointed to some old cases purportedly standing for the principle that the "inhabitants of [a federal enclave] cease to be inhabitants of the state and can no longer exercise any civil or political rights under the laws of the state." 150 Md. at 598, 133 A. at 732. The holdings in the cases cited in *Lowe* included the following: that residents on a federal enclave could not vote at state elections, that residents of a federal enclave could not send their children to the state public schools, and that residents of federal enclaves are exempt from all county and state taxes. The views expressed in *Lowe* were reiterated by this Court in *Royer v. Bd. of Elec. Sups.*, 231 Md. 561, 191 A.2d 446, *cert. denied*, 375 U.S. 921, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963).

The Supreme Court in *Evans v. Cornman, supra,* 398 U.S. at 421–426, 90 S.Ct. at 1754–1757, 26 L.Ed.2d at 373–377, expressly disapproved of the holding in *Royer v. Bd. of Elec. Sups., supra,* and disapproved of the principles set forth in both *Royer* and *Lowe. Evans v. Cornman,* also involving residents of an "exclusive" federal enclave in Maryland, held that such persons were residents of the State of Maryland, were entitled to vote in Maryland elections, were subject to Maryland taxes, and were subject to

numerous other Maryland laws. The Supreme Court explicitly stated that residents of federal enclaves in Maryland "are subject to the process and jurisdiction of state courts; they themselves can resort to those courts in divorce ... proceedings; and they send their children to Maryland public schools." 398 U.S. at 424, 90 S.Ct. at 1756, 26 L.Ed.2d at 376. The Court also pointed out that the view taken by numerous older cases concerning "the relationship between federal enclaves and the States in which they are located" is no longer accurate. 398 U.S. at 423, 90 S.Ct. at 1755, 26 L.Ed.2d at 375. *See also Howard v. Commissioners of Sinking Fund of City of Louisville*, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953).[9]

*Lowe v. Lowe* and *Royer v. Bd. of Elec. Sups.* are not only inconsistent with controlling Supreme Court authority, but they are inconsistent with the policy of the Maryland General Assembly embodied in § 14–102 of the State Government Article and §§ 2–101 *et seq.* and 6–101 of the Courts and Judicial Proceedings Article. Consequently, the *Lowe* and *Royer* cases are overruled.

## IV.

The District of Columbia argues that even if a Maryland court could exercise jurisdiction over a tort suit based on activities of an individual or of a private corporation occurring on a federal enclave, it cannot exercise jurisdiction over the District, a public corporation. The District claims that it is entitled to the same governmental immunity as the United States. The District asserts that requiring it to answer in a Maryland court would "interfere with the

---

**9.** It is noteworthy that the specific holding in the *Lowe* case would leave the residents of a federal enclave without a remedy, as the federal courts have no jurisdiction over divorce actions. *Ankenbrandt v. Richards*, 504 U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Barber v. Barber*, 21 How. (62 U.S.) 582, 16 L.Ed. 226 (1859). The Supreme Court, however, has made it clear that "no area however small will be left without a developed legal system for private rights," *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100, 60 S.Ct. 431, 434, 84 L.Ed. 596, 600 (1940).

District's governmental functions." (District of Columbia brief at 11).

In support of its immunity argument, the District relies on several Supremacy Clause cases. *See, e.g., Pacific Coast Dairy v. Department of Agriculture,* 318 U.S. 285, 295, 63 S.Ct. 628, 631, 87 L.Ed. 761, 767 (1943); *United States v. McGee,* 714 F.2d 607, 612 (6th Cir.1983); *United States v. Bellevue,* 474 F.2d 473, 476 (8th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 60 (1973); *United States v. Dreos,* 156 F.Supp. 200, 206 (D.Md.1957). In these cases, the courts held that federal employees on federal enclaves could not be subjected to state legislation in the face of a conflicting federal law or federal function. Thus, the Supreme Court has stated *(James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 103–104, 60 S.Ct. 431, 436, 84 L.Ed. 596, 603 (1940)):

> "[T]he authority of state laws or their administration may not interfere with the carrying out of a national purpose. Where enforcement of the state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way."

▆▆ In the context of this case, however, the District of Columbia is not the United States, is not carrying out a national purpose, and is not entitled to the governmental immunity or supremacy of the United States. The District is "a body corporate for municipal purposes," D.C.Code Ann. (1981, 1992 Repl.Vol.), § 1–102(a), and it has been treated as a municipality by the courts. *See, e.g., Haynesworth v. Miller,* 820 F.2d 1245, 1271–1272 (D.C.Cir.1987). The District is not treated like the United States, but rather is treated like any other municipality for purposes of 42 U.S.C. § 1983. *See, Dorman v. District of Columbia,* 888 F.2d 159, 162 (D.C.Cir.1989); *Best v. District of Columbia,* 743 F.Supp. 44, 45–47 (D.D.C.1990); *O'Callaghan v. District of Columbia,* 741 F.Supp. 273, 276 (D.D.C.1990); *Propert v. District of Columbia,* 741 F.Supp. 959, 960 (D.D.C. 1990).

■ It has been held that the District's governmental immunity is not derived from the United States but rather has developed in the case law of the District of Columbia as a common law theory of municipal governmental immunity. *Wade v. District of Columbia*, 310 A.2d 857, 861–862 (D.C.App.1973). Moreover, a Maryland court need not recognize the governmental immunity of another state or of a municipal corporation or political subdivision outside of Maryland. *See Nevada v. Hall*, 440 U.S. 410, 417–425, 99 S.Ct. 1182, 1186–1190, 59 L.Ed.2d 416, 422–428 (1979); *Biscoe v. Arlington County*, 738 F.2d 1352, 1357 (D.C.Cir. 1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); *Peterson v. State of Texas*, 635 P.2d 241, 242–243 (Colo.App.1981); *Struebin v. State*, 322 N.W.2d 84, 85–86 (Iowa), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); *Mianecki v. Second Judicial Dist. Court*, 658 P.2d 422, 423 (Nev.), *cert. dismissed*, 464 U.S. 806, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). The District of Columbia cannot avoid this result by relying on cases involving conflicts between state law and federal law or federal functions which are governed by the Supremacy Clause of the United States Constitution.

Therefore, we hold that a Maryland court has the authority to exercise jurisdiction in a case where the District of Columbia is sued for its allegedly tortious activities on a federal enclave located in Maryland.[10]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT

---

**10.** As previously stated, the District alternatively argued in the trial court that the plaintiffs' complaint failed to state a cause of action because there was no special relationship between the plaintiffs and the District giving rise to a duty, because there was no causal connection between the alleged negligence of these defendants and the death of Thomas T. Hansford, Jr., and because there was no basis in law for the § 1983 constitutional claims. The District did not file a cross-petition or a conditional cross-petition for a writ of certiorari raising these issues. Consequently, the District does not in its brief seek to sustain the trial court's judgment by pressing the duty, proximate cause, and § 1983 arguments. Therefore, we express no opinion on these issues; they are for the trial court on remand.

WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.